KENAI CHRYSLER CENTER, INC., an Alaskan Corporation, DaimlerChrysler Insurance Agency, Inc., a Michigan Corporation, Appellants/Cross–Appellees,

v.

Dorothy and Michael DENISON, as guardians of David Denison, Appellees/Cross–Appellants.

Nos. S–11688, S–11707.

Supreme Court of Alaska.

Sept. 21, 2007.

Dennis R. Acker, Anchorage, for Appellants/Cross–Appellees.

Thomas A. Dosik, Disability Law Center of Alaska, Anchorage, for Appellees/Cross–Appellants.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

Kenai Chrysler Center, Inc., sold a car to David Denison, not knowing that David was developmentally disabled and subject to the legal guardianship of his parents. When the Denisons tried to return the car and insisted that the contract was void, Kenai Chrysler refused to take it back and demanded restitution to rescind the contract. The Denisons sued Kenai Chrysler[1] and won an award of

---

1. In addition to suing Kenai Chrysler Center, Inc., the Denisons named DaimlerChrysler Insur-

treble damages under Alaska's Unfair Trade Practices Act. On appeal, Kenai Chrysler challenges the jury verdict and various rulings made by the superior court. The Denisons cross-appeal, challenging the superior court's award of attorney's fees and its failure to impose sanctions against Kenai Chrysler. We find no merit in the parties' arguments and affirm the superior court's judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

David Denison is a developmentally disabled young man who has been under the legal guardianship of his parents since 1999, when he turned eighteen. In October 2002 David was living in his own apartment, but his parents strictly controlled his finances. They visited him at least once each week to make sure he had a clean and safe place to live and was budgeting his food money properly. They also visited him socially several times every week. They spoke with David nearly every day.

The Denisons first learned that David wanted to buy a car when David called his father, Michael, from Kenai Chrysler and asked him to cosign for a used car; David did not tell his father where he was when he called. Michael refused to cosign. The next day, David again tried to purchase a car from Kenai Chrysler. This time, he was trying to buy a new car, a Dodge Neon, which he could finance without a cosigner. David called his mother, Dorothy, to ask for money for a down payment. Dorothy refused and told him not to buy a car. She assumed her word would be final because she did not realize that David could obtain any appreciable amount of money with his debit card.

David used his debit card and bought the Neon. Kenai Chrysler charged $16,614 for the car and $945 for the dealership's extended service plan. With additional charges, fees, and taxes, the total price came to $17,802. Kenai Chrysler gave David credit for trading in his 1994 Pontiac Grand Am,

and applied a $2,000 factory rebate to the down payment, which allowed David to buy the new Neon with only $500 in cash. Kenai Chrysler financed the remaining $12,851.77 at 11.99% APR for five years.

One or two days after David signed the contract, Dorothy came to Kenai Chrysler with David and informed the salesman who had sold David the car and a Kenai Chrysler manager that David was under the legal guardianship of his parents and had no legal authority to enter into a contract to buy the Neon. Dorothy showed the manager David's guardianship papers and asked him to take back the car. The manager refused; according to Dorothy, he told her that Kenai Chrysler would not take back the car, and that the company sold cars to "a lot of people who aren't very smart." Dorothy insisted that the contract was void, but the Kenai Chrysler manager ignored her and handed the keys to David over Dorothy's objection. David drove off in the new car. Dorothy contacted Duane Bannock, the general manager of Kenai Chrysler, the next day; he told her that he had seen the guardianship papers, but he still thought that the contract was valid and that David was bound by it.

A couple of days after Kenai Chrysler gave David back the keys, David damaged the Neon in a one-car accident. The Denisons then managed to get the car away from David and return it to Kenai Chrysler, but six days later, when David called Kenai Chrysler to ask for his Pontiac back, someone at the dealership told him that he could not have it but could pick up his new car any time. David got a ride to Kenai Chrysler and picked up the Neon. The next day the Denisons were able to convince David to return the car to Kenai Chrysler yet again, and this time he left the car there.

While they were trying to handle the immediate challenge of returning the Neon to Kenai Chrysler and preventing anyone there from giving it back to David, the Denisons also sought legal advice about the validity of the contract. They consulted the Alaska State Association for Guardianship and Ad-

ance Agency as a defendant. For convenience, we refer to both defendants collectively as "Kenai Chrysler."

vocacy and the Disability Law Center; advocates at both offices confirmed Dorothy's belief that the contract was void. Michael Denison also contacted the court-appointed investigator for David's guardianship case. The investigator contacted Kenai Chrysler's general manager, Bannock, and advised Bannock that the guardianship did indeed make the contract legally void; Bannock refused to listen to the advice. An advocate from the Disability Law Center contacted Robert Favretto, the owner of Kenai Chrysler, on the Denisons' behalf. Favretto would not listen to the advocate's advice. Despite these contacts, Kenai Chrysler sought no legal advice concerning the validity of the sales contract until November 15, a full month after the sale.

During this time, Kenai Chrysler continued in its active efforts to enforce the contract. The company promptly assigned David's loan to the General Motors Acceptance Corporation (GMAC) but never informed GMAC of David's incapacity. It also demanded storage fees from David for keeping the Neon on its lot. It sold David's Pontiac trade-in on the same day the Denisons brought the Neon back for the second time, even though the Denisons were still contesting the sale.

GMAC eventually repossessed the Neon and sold it, resulting in a deficiency on the loan. After the Denisons' attorney informed GMAC of David's guardianship, GMAC agreed to treat the loan as uncollectible. Kenai Chrysler paid GMAC the deficiency without asking whether GMAC intended to collect the loan.

### B. Proceedings

On December 4, 2002, Kenai Chrysler petitioned in probate court to modify David's guardianship order so that it would allow him to purchase the car. The company claimed to have standing to file the probate petition as "a person interested in the ward's welfare." The probate court denied the petition and awarded the Denisons attorney's fees, expressly finding the petition to be frivolous and without good cause.

The day after Kenai Chrysler filed its petition in probate court, the Denisons sued the company, seeking a judgment declaring that the sales contract was void because of the guardianship. The Denisons also sought an injunction to prevent Kenai Chrysler from enforcing the contract, monetary damages under the Unfair Trade Practices Act (UTPA),[2] and punitive damages. Kenai Chrysler counterclaimed for restitution, including reimbursement for paying the deficiency to GMAC.

The parties filed cross-motions for summary judgment on Kenai Chrysler's liability under the UTPA. The superior court denied both motions, but noted that the Denisons appeared to be entitled to summary judgment on their claim to declare the contract void as a matter of law. The court also observed that, even though Kenai Chrysler had cited the Restatement (Second) of Contracts to support the validity of the contract, the company had "failed to address the section of the restatement dealing directly with the capacity of persons under guardianship by reason of an adjudication of mental illness or defect to incur contractual duties."

The Denisons then moved for summary judgment on their claim for declaratory relief. Kenai Chrysler requested a continuance for discovery to determine whether the Denisons had abandoned their guardianship. The company characterized this issue as the key to proving that the Denisons owed restitution. The superior court granted the continuance, but Kenai Chrysler failed to seek any appropriate discovery on the issue. The Denisons renewed their motion for summary judgment after the close of discovery, and Kenai Chrysler did not oppose their motion. The court granted the Denisons' motion for summary judgment and declared the sales contract void as a matter of law. It also summarily granted judgment against Kenai Chrysler on its affirmative defenses and counterclaims.

The Denisons' case proceeded to trial before a jury on the Denisons' UTPA claim. During the trial, the Denisons sought to refresh the memory of a Kenai Chrysler em-

**2.** AS 45.50.471–.561.

ployee by referring to a rental rate quote that Dorothy had obtained from the company. The trial court allowed the Denisons to rely on the quote for this purpose, even though Kenai Chrysler objected that the quote had not been disclosed to it before trial.

The trial court also directed Kenai Chrysler general manager Duane Bannock to rely on a prepared script in responding to questions by Kenai Chrysler that asked Bannock to describe the legal advice he had received concerning the Denisons' claim.

At the conclusion of the trial, the jury returned a verdict in the Denisons' favor. The verdict awarded David $500 for loss of his down payment, $4,650 for the value of his Pontiac trade-in, and $5,000 for the loss of use of his Pontiac after the sale. Although the jury found that Kenai Chrysler had demonstrated "reckless indifference" to David's interests, the jury foreman advised the court that the jury did not favor awarding punitive damages. Upon learning of the foreman's advice, the Denisons indicated that they would waive their claim for punitive damages. The superior court later awarded the Denisons treble damages under the UTPA; the award totaled $30,450.

The Denisons also requested $63,280 in attorney's fees. After subtracting fees incurred by the Denisons in the probate matter, the superior court awarded them eighty percent of the amount they requested. The court noted that while it did "not challenge the accounting or hourly rate, it [did] find that the time spent in pursuit of the claim was more than should [have been] reasonably charged to the Defendants under the circumstances...." The court then entered final judgment against Kenai Chrysler. In entering judgment, the court neglected to rule on two motions the Denisons had previously filed asking the court to impose sanctions against Kenai Chrysler; the court had reserved ruling on the motions until the conclusion of trial, but evidently forgot to address them before entering judgment.

Kenai Chrysler appeals on various grounds. The Denisons cross-appeal, contesting the award of attorney's fees and the trial court's failure to sanction Kenai Chrysler.

## III. KENAI CHRYSLER'S APPEAL

### A. The Superior Court's Summary Judgment Rulings

 Kenai Chrysler first challenges the superior court's summary judgment orders.[3]

#### 1. Summary judgment for Denisons on claim for declaratory relief

The Denisons moved for summary judgment on their claim for a declaratory judgment that the contract between David and Kenai Chrysler was void and not merely voidable; they filed their initial motion before the close of discovery. Kenai Chrysler argued in opposition that issues of fact existed as to whether the Denisons neglected and abandoned their duties as guardians; the company moved for a continuance under Alaska Civil Rule 56(f) until discovery was complete. The court granted the continuance. The Denisons renewed their motion for summary judgment after the close of discovery and supported their renewed motion with an affidavit of Dorothy Denison describing the duties the Denisons performed as David's guardians. Kenai Chrysler failed to oppose the renewed motion and offered no evidence suggesting that the guardianship had been abandoned. The superior court granted the renewed motion for

---

**3.** We review summary judgment rulings *de novo*. *Parker v. Tomera*, 89 P.3d 761, 765 (Alaska 2004). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In reviewing the record, we draw all inferences in favor of the non-moving party. *Id.* Once the moving party satisfies its burden of showing a lack of genuine issues of material fact and its right to judgment as a matter of law, the non-moving party can avoid summary judgment only by offering "evidence reasonably tending to dispute or contradict the movant's evidence and thus demonstrate that a material issue of fact exists." *Id.* (quoting *State, Dep't of Highways v. Green*, 586 P.2d 595, 606 n. 32 (Alaska 1978)). We may affirm a grant of summary judgment on any legal basis appearing in the record. *Martinez v. Ha*, 12 P.3d 1159, 1162 (Alaska 2000) (citing *Denardo v. GCI Commc'n Corp.*, 983 P.2d 1288, 1290 (Alaska 1999)).

summary judgment, declaring the sales contract void as a matter of law. On appeal, Kenai Chrysler contests the order granting summary judgment.

As a preliminary matter, we note that Kenai Chrysler abandoned this issue by failing to oppose the Denisons' renewed motion for summary judgment. Even if Kenai Chrysler had preserved the issue, moreover, the company's position would be unpersuasive. Kenai Chrysler points out that Alaska has not expressly held that a valid guardianship order automatically voids an attempt by the ward to create a binding contract. In Kenai Chrysler's view, the party contracting with the ward should at least be entitled to restitution; and in any event, Kenai Chrysler maintains, factual issues existed here as to the validity of David's guardianship.

These arguments lack merit. Under the Restatement (Second) of Contracts, the existence of a valid legal guardianship precludes the formation of a valid contract with the guardianship's ward.[4] In keeping with the Restatement's view, we ruled in *Pappert v. Sargent* that a party who attempted to enter into a contract with a ward would be entitled to restitution only in the absence of actual or constructive knowledge of the ward's incompetence.[5] Kenai Chrysler nevertheless cites *Pappert* as a case supporting its position that a genuine issue of material fact existed as to whether the dealership had notice of David's guardianship. But Kenai Chrysler misreads *Pappert.* The incompetent party in *Pappert* was not under a legal guardianship,[6] and the circumstances of the disputed transaction in that case failed to create any reason to suspect incompetence.[7] By contrast, in the present case, David Denison was a ward under a formal guardianship order that declared him incompetent to enter into a contract. And under the Restatement (Second) of Contracts, the guardianship order gave notice to the public of David's incapacity:

> The guardianship proceedings are treated as giving public notice of the ward's incapacity and establish his status with respect to transactions during guardianship even though the other party to a particular transaction may have no knowledge or reason to know of the guardianship: the guardian is not required to give personal notice to all persons who may deal with the ward.[8]

Since Kenai Chrysler had constructive notice of David's incapacity, it was not entitled to restitution under *Pappert v. Sargent.*[9]

Kenai Chrysler's position also ignores Alaska's territorial case law. In *The Emporium v. Boyle,* the Alaska territorial court followed opinions from several states recognizing that "an adjudication of insanity is notice to all the world of the fact that from that time on neither the lunatic nor his estate can be held upon any contract except those completed before that time."[10] Applying this principle, the court in *The Emporium* held that a letter of credit authorizing another person to purchase goods on account was automatically revoked when the person who wrote the letter was declared incompetent.[11] This conclusion was justified, the court explained, "because the world was charged with notice of the adjudication."[12]

Based on these authorities, we conclude that the superior court correctly interpreted and applied the law. We also reject Kenai Chrysler's suggestions that factual issues

---

4. *See* Restatement (Second) of Contracts § 13 (1981).

5. *Pappert v. Sargent,* 847 P.2d 66, 69 (Alaska 1993).

6. *Id.* at 70.

7. *Id.* at 69.

8. Restatement (Second) of Contracts § 13, cmt. a (1981).

9. Although Kenai Chrysler advances a conclusory argument that the legal guardianship order did not establish constructive notice in this case, the company cites no authority to support this conclusion.

10. *The Emporium v. Boyle,* 7 Alaska 80, 82 (1923).

11. *Id.* at 84.

12. *Id.; accord Huntington Nat'l Bank v. Toland,* 71 Ohio App.3d 576, 594 N.E.2d 1103, 1105 (1991) ("[T]he probate record of judgment is deemed to provide constructive notice to the world of the ward's legal disability.").

concerning David's state of mind at the time of the sale precluded summary judgment on the Denisons' claim for declarative relief.

■ The Restatement makes it clear that a ward does not regain the ability to enter into a contract merely by having a "lucid interval"; instead, to establish restored ability to enter into a contract, the evidence must show that the guardianship was "terminated or abandoned."[13] Although Kenai Chrysler argues here that evidence of the Denisons' neglect might have supported a finding of restored capacity, the Restatement's standard requires more than a showing of mere neglect. The Restatement refers to the termination of a guardianship occurring by death or removal of the guardian, or by lapse where the "ward resumes full control of his property without interference over a substantial period of time."[14]

■ To support its claim that the Denisons abandoned David as their ward, Kenai Chrysler alleges that the Denisons (1) failed to produce evidence that they had filed a visitor report as required by AS 13.26.118(a); (2) allowed David to use his own bank account; (3) permitted David to work in a retail establishment where he used a cash register; (4) failed to prevent David from entering into the Dodge Neon transaction; (5) failed to inform Kenai Chrysler promptly of the guardianship's existence; (6) failed to prevent David from driving the Neon; and (7) failed to appoint a conservator for David when they encountered trouble controlling his purchases. But these circumstances fail to raise a genuine question of material fact on the issue of abandonment.

The absence of a routine report hardly amounts to abandonment. Nor can abandonment be shown by evidence suggesting that the Denisons encouraged David to act independently. To the contrary, the terms of David's guardianship order instructed his guardians to encourage David to be as independent as possible while still protecting him. Allowing David a bank account and a job falls squarely within the scope of these instructions by encouraging David's development.

Furthermore, the guardianship order did not oblige the Denisons to watch David's every movement in order to prevent him from trying to enter into contracts. Instead, as we have already observed, the guardianship order itself gave legal notice to all potential contracting parties to avoid entering into a bargain with David. Accordingly, neither the Denisons' failure to prevent the Kenai Chrysler contract nor their failure to give Kenai Chrysler advance warnings could reasonably be construed to imply abandonment of the guardianship.[15]

Finally, the Denisons' supposed inability to control David's spending does not reasonably suggest an abandonment; the uncontradicted evidence of their ongoing efforts to control David's finances shows just the opposite. The Denisons are David's guardians, not his guarantors.

In short, Kenai Chrysler failed to adduce any evidence sufficient to raise a genuine issue of material fact precluding the superior court from ruling as a matter of law that David's status as a ward rendered his contract with Kenai Chrysler void. We thus affirm the superior court's summary judgment order declaring the contract void as a matter of law.

### 2. Summary judgment for the Denisons on Kenai Chrysler's affirmative defenses

The superior court also granted the Denisons' summary judgment motion on all of Kenai Chrysler's affirmative defenses. Kenai Chrysler argues on appeal that summary judgment was inappropriate, specifically contending that the trial court erred in precluding the company from defending on the

---

**13.** RESTATEMENT (SECOND) OF CONTRACTS § 13, cmt. a (1981).

**14.** RESTATEMENT (SECOND) OF CONTRACTS § 13, cmt. d (1981).

**15.** We also note that Dorothy Denison unequivocally informed Kenai Chrysler of the guardian-

ship within two days of the sale, when she tried to return the car. And in any event, the Denisons' inability to prevent David from driving the Neon after Kenai Chrysler refused to accept the car has no bearing on the guardianship's validity earlier, or when David actually signed the contract.

grounds that the Denisons failed to mitigate their damages and neglected to join a necessary party, GMAC.

### a. Mitigation of damages

Kenai Chrysler argues that the superior court erred in granting summary judgment to the Denisons on the issue of their alleged failure to mitigate their damages. The Denisons recognize that they had a duty to act on David's behalf to mitigate his damages, but argue that they did everything they could to comply with that duty. The only money damages ultimately implicated by Kenai Chrysler's mitigation defense were those resulting from the company's UTPA violations: specifically, the jury awarded the Denisons damages for the $500 down payment Kenai Chrysler refused to refund, the $5,000 in damages David incurred by losing the use of his Pontiac, and the $4,650 representing his permanent loss of the car itself.

 Under the undisputed facts, only one of these three items of damages—lost-use damages—arguably fell within the Denisons' control. Kenai Chrysler had the sole power to mitigate the $500 down payment it received from David. But the company refused to unwind the contract and refund the cash. Similarly, only Kenai Chrysler could have mitigated David's damages for the permanent loss of his Pontiac. But the company refused to give the car back, and thus permanently deprived David of its fair market value. The superior court's summary judgment order properly barred Kenai Chrysler from raising a mitigation defense as to these damages.

 The court's order granting summary judgment becomes more problematic as applied to the Denisons' claim for damages attributable to David's loss of use of his car. Our case law does not preclude lost-use dam-

ages in cases involving permanent deprivation. In fact, we have specifically allowed an award of loss of use damages even when property has been totally destroyed.[16] We have further held that a plaintiff who loses property is not always made whole by being paid fair market value at some later time; we have recognized that, as long as the delay in finding a suitable replacement is reasonably necessary, the plaintiff in such cases can be awarded damages exceeding the property's fair market value.[17] We have also ruled that a plaintiff who claims loss of use need not incur any actual costs for temporary replacement; the claimant may instead rely on an estimate of the cost for temporary replacement.[18]

On the other hand, as the superior court's instructions recognized, our case law unquestionably precluded the Denisons from claiming loss of use damages beyond the time reasonably necessary to replace David's Pontiac.[19] Because the Denisons needed to take reasonable steps to limit the duration of their lost-use damages, the trial court's summary judgment order was inappropriate to the extent that it purported to rule as a matter of law that the Denisons had actually met their duty to mitigate, thereby precluding Kenai Chrysler from maintaining that their delay in replacing the Pontiac was unreasonable. Since the reasonableness of the Denisons' delay was disputable when the superior court granted summary judgment, we agree with Kenai Chrysler that its right to raise a mitigation defense on this point could not be denied as a matter of law.

 The appellate record nevertheless establishes that any error in granting summary judgment against Kenai Chrysler on the Denisons' duty to mitigate their loss of use damages amounted at most to harmless error. Specifically, the record establishes

---

**16.** *Alaska Constr. Equip., Inc. v. Star Trucking, Inc.*, 128 P.3d 164, 169 (Alaska 2006).

**17.** *Id.* (citing *Ben Lomond, Inc. v. Campbell*, 691 P.2d 1042, 1047 (Alaska 1984)).

**18.** *Id.* at 169–70. We have nevertheless cautioned that damages for lost use may not be awarded together with prejudgment interest for damages representing permanent lost value,

since such an award would give the plaintiff a double recovery. *See id.* at 170 (citing *State v. Stanley*, 506 P.2d 1284, 1295 (Alaska 1973)). In the present case, however, Kenai Chrysler does not challenge the superior court's award on this basis.

**19.** *State v. Stanley*, 506 P.2d 1284, 1293 (Alaska 1973).

that, despite the seeming breadth of its summary judgment order, the superior court allowed Kenai Chrysler to contest the reasonableness of the Denisons' claim for loss of use damages and to argue that they could have limited their losses through reasonable action.

At trial, the Denisons specifically objected to evidence presented by Kenai Chrysler that challenged the reasonableness of their loss of use claim, insisting that this evidence violated the trial court's order granting them summary judgment on Kenai Chrysler's affirmative defense of mitigation. But the trial court overruled this objection, allowed Kenai Chrysler to rely on the disputed evidence, and specifically ruled that Kenai Chrysler could argue to the jury whether the lost-use damages claimed by the Denisons were "reasonable under the circumstances." By submitting the issue of reasonableness to the jury after allowing the parties to contest the point, the trial court effectively avoided any prejudice stemming from the overbreadth of its summary judgment order.

■ Although Kenai Chrysler relatedly contends that it was prejudiced by the superior court's failure to give a proper instruction on the Denisons' duty to limit their lost-use damages, the record belies this claim of error. At trial, Kenai Chrysler objected to the Denisons' proposed instruction on the issue of loss of use of David's Pontiac. The company proposed an alternative instruction, asserting that the language of its proposed version more closely approximated Alaska's pattern jury instruction on lost-use damages.[20] Kenai Chrysler's proposed instruction provided:

> Plaintiffs also claim they have been damaged by the loss of use of the 1994 Pontiac. If you find that the defendant caused the loss of the 1994 Pontiac, then the plaintiff is entitled to be compensated for the fair value of the use of the 1994 Pontiac for the time period reasonably necessary to replace it.

The court ultimately instructed the jury on loss of use of property as follows:

> Plaintiffs also claim on behalf of David Denison that he was damaged by the loss of use of the 1994 Pontiac since the time it was delivered to Kenai Chrysler. The plaintiffs are entitled to be compensated for the fair value of the use of the 1994 Pontiac for the time period reasonably necessary to replace it.

Kenai Chrysler now objects that the court's instruction modified Alaska's pattern loss of use instruction. But the company fails to explain exactly what change it objects to, why the change amounted to legal error, and how any error caused actual prejudice. Kenai Chrysler's argument is also puzzling because the company's own proposed instruction seems to stray further from the pattern instruction than the instruction the trial court actually gave.[21] In light of Kenai Chrysler's conclusory briefing on this point, we conclude that it has failed to adequately preserve the issue.[22]

Kenai Chrysler also complains that the trial court erred in failing to give the jury a specific instruction on the Denisons' duty to mitigate their damages. But while the trial court did not specifically instruct on the duty to mitigate as such, its instruction on loss of use damages communicated the substance of that requirement.

Alaska's Pattern Jury Instruction on mitigation speaks in terms of "avoidable consequences" and uses the language of reasonableness, informing the jury that a plaintiff may not recover for a loss that could have been avoided with reasonable efforts and that the jury may not require the defendant to pay for any loss that the plaintiff could rea-

---

**20.** Alaska Pattern Jury Instruction No. 20.16 reads:

The (first, second, etc.) item of claimed loss is the loss of use of the (insert item of property). The plaintiff is entitled to be compensated for the fair value of the use of the (insert item of property) during the period (reasonably necessary to fix it) (plaintiff was unable to use it) (it was held by the defendant) (reasonably neces-

sary to replace it). In a moment I will explain how to measure the value of the loss of use.

**21.** *Compare* Alaska Pattern Jury Instruction No. 20.16 *with* Kenai Chrysler's Proposed Instruction *and* Instruction No. 14.

**22.** *See Kristich v. State,* 550 P.2d 796, 804 (Alaska 1976).

sonably have avoided.[23] In this case, as we have seen, the trial court's instruction on loss of use damages specifically told the jury that the Denisons were "entitled to be compensated for the fair value of the use of the 1994 Pontiac for the time reasonably necessary to replace it." We see no practical distinction between this instruction and Alaska's Pattern Instruction on the duty to mitigate, as it would have applied to the Denisons' loss of use claim.

Hence, to the extent that the trial court's error in granting summary judgment against Kenai Chrysler caused the court to omit a specific instruction on mitigation, we conclude that this omission proved inconsequential. We therefore hold that the trial court's order granting summary judgment against Kenai Chrysler on its mitigation defense did not result in reversible error.

### b. Failure to join a necessary party

▇▇▇ Kenai Chrysler claimed as an affirmative defense below that the Denisons' claims under the UTPA were barred because the Denisons had failed to join GMAC as a necessary party under Alaska Civil Rule 19(a).[24] Kenai Chrysler reasoned that GMAC needed to be named because no other party had legal authority to rescind the sales contract once Kenai Chrysler assigned it to GMAC. Kenai Chrysler now challenges the superior court's order granting the Denisons summary judgment on this point, renewing the claim it asserted below.

Because it is undisputed that Kenai Chrysler assigned the Neon's financing contract to GMAC shortly after David signed it, the only controversy is whether the assignment to GMAC precluded the Denisons from obtaining "complete relief" from Kenai Chrysler without naming GMAC.[25] As the superior

court correctly recognized in addressing this point, there was no valid contract for Kenai Chrysler to assign to GMAC. GMAC therefore played no necessary role in the Denisons' action. Their claims under the UTPA concerned Kenai Chrysler's treatment of David Denison and his guardians, not whether the Denisons were entitled to rescind a contract that had never been validly formed. The superior court properly granted summary judgment on this point.

### B. The Superior Court's Refusal To Compel Discovery

▇▇▇ Kenai Chrysler moved under Civil Rule 37(a)(2) to compel "proper and sufficient responses" to a list of discovery requests. The Denisons opposed that motion on the. ground that Kenai Chrysler had not made a good faith attempt to meet and confer with them, as required under Civil Rule 37(a)(2)(B); they alternatively contended that Kenai Chrysler was not entitled to the information it sought. Kenai Chrysler challenges the superior court's denial of its motion to compel these responses.[26]

Although the superior court did not specify its reasons for denying Kenai Chrysler's motion to compel discovery, it was well within the court's discretion to deny the motion based on Kenai Chrysler's failure to meet and confer. Civil Rule 37(a)(2)(B) requires a party moving to compel discovery to certify that it "has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action." [27] When the Denisons initially refused to comply with Kenai Chrysler's discovery requests, the company sent the Denisons a letter demanding that they comply or

---

**23.** Alaska Pattern Jury Instruction No. 20.18A.

**24.** Alaska Civil Rule 19(a) states in part: "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties[.]"

**25.** Alaska R. Civ. P. 19(a).

**26.** We review the superior court's rulings on discovery issues for abuse of discretion. *Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (1999). We will find an abuse of discretion only when " 'we are left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling.' " *Melendrez v. Bode*, 941 P.2d 1254, 1256 (Alaska 1997) (quoting *Peter Pan Seafoods, Inc. v. Stepanoff*, 650 P.2d 375, 378–79 (Alaska 1982)).

**27.** Alaska R. Civ. P. 37(a)(2)(B).

face a motion to compel. The letter itemized the discovery requests at issue but failed to respond to the Denisons' objections of overbreadth and irrelevance except in a cursory fashion. The letter also nominally claimed to be an attempt to confer, but it included no offer to actually meet with the Denisons or to engage in a dialogue in any medium.[28]

In moving to compel discovery from the Denisons, Kenai Chrysler's counsel certified that Kenai Chrysler's letter to the Denisons met Rule 37(a)(2)(B)'s requirement of an "offer to meet and confer." But given these circumstances, the superior court could reasonably have found that Kenai Chrysler made no genuine attempt to resolve the disputed discovery issues before turning to the court with its motion to compel. Because the superior court properly could have denied Kenai Chrysler's motion on this basis, we find no abuse of discretion.

### C. The Superior Court's Evidentiary Rulings

Kenai Chrysler challenges two evidentiary rulings made by the superior court during trial.

#### 1. Refreshing the memory of Kenai Chrysler's general manager

■ The Denisons called Justin Goodman as a witness at trial. Goodman was the general manager of Kenai Chrysler and frequently gave rate quotes for car rentals. The Denisons' counsel asked Goodman whether he remembered providing a rate quote to Dorothy Denison for a rental car. Goodman replied that he did not. The Denisons' counsel then showed Goodman two documents—a fax cover sheet addressed to Dorothy Denison and a price quote signed by Goodman estimating the rental rate for a compact car. The day before, the superior court had refused to admit the same rental quote into evidence after Kenai Chrysler's

counsel objected that the Denisons had not disclosed the document in advance of trial. Kenai Chrysler objected when the Denisons sought to use the rate quote to refresh Goodman's recollection, relying on the court's earlier order excluding it from evidence. In response to the renewed objection, the trial court ruled that the Denisons would not be barred from using it to refresh Goodman's recollection.

Kenai Chrysler now argues that the trial court erred in allowing the documents' use to refresh recollection, contending that the company suffered unfair surprise because the Denisons failed to produce the rate quote before trial.

■ Alaska Rule of Evidence 612(a) governs this issue, stating "[a]ny writing or object may be used by a witness to refresh the memory of the witness while testifying." [29] Under this rule, a document need not be admissible to be used to refresh a witness's memory.[30] Instead, if the party using the document does not wish to admit it, Rule 612(a) simply allows any party seeking to impeach the witness whose memory is refreshed the right "to inspect the writing ..., to cross-examine the witness thereon, and to introduce those portions which relate to the testimony of the witness." [31] By expressly granting the right to immediate inspection, the rule implicitly recognizes the absence of a pretrial duty of disclosure.

Under the rule, then, Kenai Chrysler had the opportunity to inspect the rate quote and to use it as a basis for impeaching Goodman during cross-examination. But the rule gave it no right of earlier disclosure. Kenai Chrysler cites no other authority requiring early disclosure for this limited use. Nor does it specify how the rate quote's use to refresh memory caused any actual prejudice. Moreover, we note that Kenai Chrysler was given a copy of the rate quote the day before

---

**28.** Kenai Chrysler also asserts that it sent a second letter to the Denisons, but the Denisons deny having received it. The letter merely reiterated Kenai Chrysler's discovery demands and again threatened a motion to compel. It therefore has no significant bearing on the motion to compel.

**29.** Alaska R. Evid. 612(a).

**30.** *See* Alaska R. Evid. 612(a) cmt. ("Rule 612 ... rejects limitations on the kinds of writings or objects that may be shown to witnesses to refresh recollection.").

**31.** Alaska R. Evid. 612(a).

the Denisons used it to refresh Goodman's recollection. Under these circumstances, the superior court did not abuse its discretion in allowing the Denisons to use the rate quote for this purpose.

### 2. Requiring Kenai Chrysler's witness to answer questions by reading written answers prepared by the trial court

During Kenai Chrysler's direct examination of Kenai Chrysler's former general manager, Duane Bannock, Kenai Chrysler's trial counsel asked Bannock whether he had sought advice from an attorney about David Denison's situation and, if so, what advice he had received. The Denisons objected; in response, Kenai Chrysler's counsel insisted that Bannock's testimony on this point was necessary to show that the dealership's actions merely reflected its good faith efforts to follow the legal advice of its counsel. Kenai Chrysler's trial counsel assured the court that "we're not arguing about the rule of law.... We're not trying to state a legal conclusion here.... We're trying to get to Duane Bannock's state of mind and the position of Kenai Chrysler during that time period, and whether or not they were acting fairly or whether or not they had a reasonable basis for their actions."

After consulting with counsel for both sides and with the witness, the trial court prepared two questions and responses that it believed sufficient to allow Bannock to make Kenai Chrysler's desired point without dwelling on legal details that might lead the jury to view the legal advice as a correct and authoritative statement of applicable law. The court ruled that questions and answers along the lines it proposed would be admissible.

After the jury returned to the courtroom and Bannock's direct examination resumed, Bannock began to stray beyond the scope of the responses the court had ruled admissible. When the Denisons objected, the court instructed Bannock to read from the paper if he was unable to confine his answers to conform to the court's written responses. The court then informed the jury that the court had drafted the responses for Bannock's use and that jurors should therefore not hold it against Bannock or question his credibility if his answers did not appear to be spontaneous.

On appeal, Kenai Chrysler challenges the superior court's decision to require Bannock to read from answers prepared by the court. But Kenai Chrysler has failed to preserve this point for appeal. Specifically, Kenai Chrysler never objected to the trial court's rulings and made no offer of proof as to the details excluded from Bannock's proposed testimony.[32]

Under Alaska Rule of Evidence 103(a)(2), a party may not claim error in a ruling that excludes evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context."[33] These requirements have not been met here, since Kenai Chrysler made no formal offer to establish a record of the evidence it sought to include, and since the context provided by the current record fails to make clear what testimony the trial court excluded.

As it stands, the appellate record provides no basis for meaningful appellate review of Kenai Chrysler's claim of prejudicial error. Accordingly, Kenai Chrysler's failure to raise the issue below, coupled with its failure to provide an adequate offer of proof, precludes it from challenging the superior court's ruling for the first time on appeal.[34]

We find no sign of plain error here.[35] The questions and responses directed by the trial court appear to have captured the main point that Kenai Chrysler's trial counsel believed to be crucial—namely, that Kenai Chrysler's conduct comported with advice received from its lawyer. Furthermore, Bannock's testimony addressing this point was marginally relevant, at most, because the

---

**32.** Alaska R. Evid. 103(a).

**33.** Alaska R. Evid. 103(a)(2); *see Clement v. Fulton,* 110 P.3d 927, 935 (Alaska 2005).

**34.** *Wagner v. Stuckagain Heights,* 926 P.2d 456, 459 (Alaska 1996).

**35.** Alaska R. Evid. 103(d).

advice Bannock described was received a month after the disputed sale—well after Kenai Chrysler had taken numerous steps committing the dealership to its position that the contract was valid and would be enforced. We thus see no basis for overturning the superior court's rulings concerning Bannock's testimony.

## D. Unfair Trade Practices Act Claim

■ Kenai Chrysler next argues that the evidence failed to support the jury's finding of liability under the UTPA and that the company's conduct did not violate the UTPA as a matter of law.[36]

■ In arguing this point, Kenai Chrysler insists that a merchant's attempt to enforce what it sees as a valid contract cannot, as a matter of law, amount to an unfair trade practice under the UTPA. Kenai Chrysler appears to contend that the evidence here showed nothing more.[37]

The Denisons sued under two sections of the UTPA: AS 45.50.471(a) and AS 45.50.471(b)(14). Subsection .471(a) is the UTPA's catchall provision; it states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful." Subsection .471(b)(14) further provides that: "[t]he terms 'unfair methods of competition' and 'unfair or deceptive acts or practices' include, but are not limited to, the following acts: ... representing that an agreement confers or involves rights, reme-

dies or obligations which it does not confer or involve, or which are prohibited by law."

■ As a general matter, a prima facie case of unfair or deceptive acts or practices under the UTPA requires proof of two elements: "(1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred."[38] We have previously ruled that "[a]n act or practice is deceptive or unfair it if has the capacity or tendency to deceive."[39] The plaintiff need not prove that the defendant intended to deceive; it is enough to show that the acts and practices were "capable of being interpreted in a misleading way."[40] Hence, an act or practice can be unfair without being deceptive.[41]

■ A variety of factors can be considered in determining the existence of an unfair practice, including '

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).[42]

The trial court in this case instructed the jury on these provisions.

---

**36.** In arguing this point, Kenai Chrysler appears to challenge both the trial court's failure to grant a directed verdict at trial and its earlier denial of summary judgment against the Denisons. To the extent that Kenai Chrysler's challenge to the summary judgment order asserts an error in interpreting the UTPA, our discussion of the UTPA in the text covers the point. To the extent that Kenai Chrysler asserts that the trial court erred in denying summary judgment on factual grounds, its challenge to the summary judgment order is barred by the case's trial on its merits. *See Larson v. Benediktsson*, 152 P.3d 1159 (Alaska 2007).

**37.** We have held that a jury's verdict may be overturned on the ground of insufficient evidence only "if there is no evidence supporting the verdict." *Nautilus Marine Enters. Inc. v. Valdez*

*Fisheries Dev. Ass'n*, 943 P.2d 1201, 1205 n. 8 (Alaska 1997). Interpretation of the UTPA presents a question of law that we review independently. *J.M.R. v. S.T.R.*, 15 P.3d 253, 256 (Alaska 2001).

**38.** *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 534 (Alaska 1980).

**39.** *Id.*

**40.** *Id.* at 535.

**41.** *Id.*

**42.** *Id.* (quoting *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972)).

Kenai Chrysler correctly asserts that these provisions require proof of something more than the mere assertion of a good faith but mistaken belief that a contract was valid.[43] Yet courts have broadly interpreted similar provisions to prohibit merchants from going beyond mere assertion of mistaken beliefs by engaging in conduct that is deceptive, unethical, or unfair.[44] The Fourth Circuit Court of Appeals, for example, described an unfair trade practice as an "inequitable assertion of power or position," ruling that "[a]lthough it may be rare that the exercise of a contractual right will meet this stringent standard, it is possible for such an exercise, when it involves egregious and aggravating conduct, to constitute an unfair ... trade practice under North Carolina's UTPA."[45]

Likewise, Georgia has recognized that a seller can commit an unfair trade practice by failing to investigate the validity of the seller's title after learning of a potential problem with it; applying this principle, the Georgia Court of Appeals held that, under the circumstances before it, the seller's inaction amounted to an unfair practice because it reflected a "blatant disregard of the rights of innocent purchasers."[46]

Many other jurisdictions define "unfair or deceptive acts or practices" to extend beyond conduct specifically prohibited by statute or common law;[47] instead of looking for expressly prohibited conduct, these cases focus on the unfairness of the disputed practice under the specific circumstances presented.[48]

■ Applying the flexible, case-specific approach used in these cases, we think that reasonable jurors could fairly find that Kenai Chrysler's conduct went far beyond a simple assertion of the company's good faith belief that the sale contract was valid.

The jury heard substantial evidence tending to show that Kenai Chrysler waited a full month after actually learning of David's disability before it first consulted its lawyer about the guardianship's effect on the disputed contract. In the interim, and every step of the way, Kenai Chrysler actively fought to defeat the Denisons' efforts to rescind the sale. The company charged ahead with selling David's trade-in and finalizing the DMV paperwork for the sale. Its employees repeatedly ignored the express requests of David's legal guardians by returning the keys directly to David; they also advised David that the car was his, despite their knowledge that the state had declared him developmentally disabled and had appointed his parents as legal guardians. Later, after it knew of the guardianship, Kenai Chrysler sent a letter to David himself demanding that he remove the Neon from its lot or incur

**43.** *Cf. Dura–Wood Treating Co. v. Century Forest Indus., Inc.,* 675 F.2d 745, 755–56 (5th Cir.1982) (interpreting the Texas Deceptive Trade Practices Act and holding that "an allegation of breach of contract—without more—does not constitute a false, misleading, or deceptive act" in violation of the DTPA); *Dealers Supply Co. v. Cheil Indus., Inc.,* 348 F.Supp.2d 579, 591 (M.D.N.C.2004) (interpreting N.C. Gen.Stat. § 75–1.1, North Carolina's statute prohibiting "unfair or deceptive acts or practices in or affecting commerce" and noting that a breach of contract alone does not give rise to a claim under that statute).

**44.** *See, e.g., S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese,* 284 F.3d 518, 539–40 (4th Cir.2002) (holding under North Carolina's UTPA that a party's timing of its exercise of its contractual right to expel a member of the partnership so that the member would lose the right to be paid for substantial work amounted to an unfair trade practice).

**45.** *Id.* at 539.

**46.** *Regency Nissan, Inc. v. Taylor,* 194 Ga.App. 645, 391 S.E.2d 467, 470 (1990) (interpreting Georgia's Fair Business Practices Act, Ga. Ann. Code § 10–1–390 et seq., which prohibits unfair or deceptive acts or practices in trade or commerce).

**47.** *See* Douglas M. Zupanec, Annotation, *Practices Forbidden by State Deceptive Practice and Consumer Protection Acts,* 89 A.L.R.3d 449, 463 (1979).

**48.** *See, e.g., St. Paul Fire & Marine Ins. Co. v. Ellis & Ellis,* 262 F.3d 53, 66 (1st Cir.2001) (noting that the standard for conduct that falls within the proscription of Massachusetts's UTPA "is notably imprecise, encompassing any actions that 'attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce, have an extortionate quality that gives it the rancid flavor of unfairness, or fall within at least the penumbra of some common-law, statutory, or other established concept of unfairness.' " (quoting *Commercial Union Ins. Co. v. Seven Provinces Ins. Co.,* 217 F.3d 33, 40 (1st Cir.2000))).

storage charges. And even though GMAC agreed to treat the unpaid balance of David's loan as uncollectible, Kenai Chrysler after paying the balance to GMAC nonetheless counterclaimed against the Denisons for the amount it had paid.

In our view, a jury considering the totality of these circumstances in the light most favorable to the Denisons could reasonably have found that Kenai Chrysler's attempts to enforce the sales contract blatantly disregarded the Denisons' rights and amounted to unethical conduct.[49] We thus conclude that the evidence as a whole was sufficient to support the Denisons' claims under the UTPA.

### E. Jury's Award

Kenai Chrysler challenges the jury's assessment of damages for the value of David's 1994 Pontiac and for his lost use of the car.

### 1. Value of David's Pontiac

██ The jury awarded the Denisons $4,650 in damages for David's permanent loss of his Pontiac. David had purchased the Pontiac from another car dealership in Kenai for $5,500, a few months before he traded it in at Kenai Chrysler. Evidence of the price charged by the local dealership a few months before Kenai Chrysler took David's car provided the jury a sufficient basis for determining the value of the Pontiac when he traded it in for the Neon. David still owed about $850 for the car. It appears that the jury subtracted this amount from David's original purchase price and awarded him the balance. Although Kenai Chrysler had valued David's trade-in at only $1,300, the jury was not obliged to rely on this price, since it reflected the car's wholesale value. Kenai Chrysler's own manager acknowledged that the Pontiac's retail value would be between $4,000 and $5,000. The dealership offered no estimate of the cost required to restore the Pontiac to retail condition. Given this evidence, the record supports the jury's award for the car.

### 2. Loss of use of David's Pontiac

██ The jury awarded David an additional $5,000 for loss of use of his car. As we have previously mentioned, the superior court instructed the jury that it could award David "the fair value of the use of the 1994 Pontiac for the time period reasonably necessary to replace it." The court also instructed the jury that "[t]he value of the use of the 1994 Pontiac is to be measured by the cost of obtaining a substitute for it during the period of loss of use." At the time of trial, David had not yet replaced the Pontiac; the Denisons claimed that their delay in replacing the car was reasonably necessary because David was unable to afford a replacement.

When the jury returned its verdict awarding loss of use damages, about twenty months had elapsed since the date of the sale. Spread over the twenty months, the $5,000 award amounts to $250 per month for David's loss of use of the Pontiac.

Justin Goodman, the general manager of Kenai Chrysler and former manager of its rental fleet, testified that he had seen rental rates as low as $499 per month in the Kenai area. He also recalled that on at least one occasion he had quoted a price of $1,200 per month for a new compact car. He further testified, however, that if the Denisons had asked, he could have allowed David to use a car free of charge.

Kenai Chrysler contends that this evidence fails to support the award for loss of use damages. In *Ben Lomond, Inc. v. Campbell*, we held that testimony concerning the reasonable rental value for a diesel generator was sufficient to support a jury award for loss of use of a comparable generator.[50] Here, if the jury found the Denisons' twenty-month delay to be reasonably necessary and disbelieved Goodman's after-the-fact contention that a free car would have been available, Goodman's testimony concerning rental value provided a substantial basis to support the jury's award: the award, amounting to $250 per month for twenty months, would fall well below the lowest rental value mentioned by Goodman—$499 per month. And it would

---

49. See *O'Neill*, 609 P.2d at 535.

50. *Ben Lomond, Inc. v. Campbell*, 691 P.2d 1042, 1046 (Alaska 1984).

nearly have matched Goodman's low range estimate if the jury found that the Denisons should reasonably have replaced the Pontiac within ten months after the sale.[51]

■■■ Kenai Chrysler also argues that the jury's award for loss of use damages was excessive because it was disproportionate to the value of David's Pontiac. To be sure, even if supported by solid evidence of monthly rental value, an award for loss of use over an extended period of time could at some point become excessive—especially if the award was combined, as it was here, with an additional award for permanent loss of the property's value. But in *Ben Lomond, Inc. v. Campbell*, we emphasized that "[t]he question of whether damages are inadequate, or excessive, is in the first instance committed to the discretion of the trial judge."[52] In light of the trial court's broad discretion over the issue, we recognized in *Ben Lomond* that a trial court's award for lost-use damages could be overturned as excessive only "in the most exceptional circumstances to prevent any miscarriage of justice."[53] Relying on this standard, we specifically declined to hold "that a loss of use award should be limited to the value of the property,"[54] noting that we had "explicitly rejected this position" on prior occasions.[55]

Our decision in *Ben Lomond* nevertheless recognized that a rule of proportionality applies to such cases.[56] *Ben Lomond* involved a dispute over a diesel generator; the claimant, Campbell, asserted the right to take possession of the generator from the defendants.[57] The jury valued the generator at

$8,000 and awarded it to Campbell.[58] In addition, the jury awarded Campbell $13,000 in damages for loss of use of the generator over a period of approximately ten months.[59] It based the award on testimony estimating the reasonable monthly rental value for a comparable generator.[60] In considering whether the award for loss of use was excessive, we acknowledged that the rule of proportionality would preclude a loss of use award that was "all out of proportion to the fair market value of the item itself."[61] We then compared the generator's $8,000 value to the loss of use damages totaling $13,000 and declined to find that this imbalance warranted a finding of excessiveness: "The $13,000 loss of use award is not so much higher than an acceptable estimate of the generator's value as to violate the rule of proportionality...."[62]

Our proportionality analysis in *Ben Lomond* dictates the same conclusion here. The jury's $5,000 award for loss of use damages only slightly exceeds the Pontiac's fair market value and is certainly not so high as to be "all out of proportion to the fair market value" of the Pontiac.[63] Because Kenai Chrysler offers no meaningful basis for distinguishing this case from *Ben Lomond*, we conclude that the jury's award for loss of use damages was not excessive. In reaching this conclusion, we emphasize that Kenai Chrysler did not contend below and has not argued on appeal that a twenty-month period of lost use is per se unreasonable and that the trial court should have imposed a shorter maxi-

51. In fact, if the jury found that the Denisons should reasonably have replaced the car within five months, its $5,000 award still would have been justified under Goodman's highest quoted rental value—$1,200 per month.

52. *Ben Lomond, Inc.*, 691 P.2d at 1046 (quoting *Heacock v. Town*, 419 P.2d 622, 623–24 (Alaska 1966)).

53. *Id.* (quoting *Haskins v. Shelden*, 558 P.2d 487, 494 (Alaska 1976)).

54. *Id.* at 1047.

55. *Id.* (citing *ERA Helicopters, Inc. v. Digicon Alaska, Inc.*, 518 P.2d 1057, 1059–60 (Alaska 1974) and *Gregory v. Padilla*, 379 P.2d 951, 956 (Alaska 1963)).

56. *Id.* (citing *Gregory*, 379 P.2d at 956).

57. *Id.* at 1044.

58. *Id.* at 1045.

59. *Id.* at 1045–46.

60. *Id.* at 1046.

61. *Id.* at 1047 (quoting *Gregory*, 379 P.2d at 956).

62. *Id.*

63. *Id.*

mum time limit for loss of use damages as a matter of law. We note that case law in other jurisdictions arguably supports a rule that would establish definite time limits for loss of use damages, at least in cases where the lost use does not result from intentional conduct.[64] Although a time-cap on loss of use damages might have much to recommend it under certain circumstances, given Kenai Chrysler's failure to raise the point before the superior court or argue it on appeal, we decline to consider adopting such a measure here.

## F. The Jury Instructions

In addition to the jury instruction issues that we have already discussed above in connection with Kenai Chrysler's arguments concerning the summary judgment order on its defense of mitigation of damages, Kenai Chrysler raises challenges to the superior court's instructions on the issues of punitive damages and conversion.

### 1. Punitive damages

■ The superior court instructed the jury on punitive damages. Kenai Chrysler asserts that the facts of the case did not warrant the instruction. But any error in giving this instruction became harmless when the Denisons expressly waived their punitive damages claim after being informed that the jury seemed disinterested in awarding punitive damages. Kenai Chrysler advances no reason to conclude that the punitive damages instruction affected any of the remaining issues decided by the jury. Accordingly, the Denisons' withdrawal of their punitive damages claim makes it unnecessary to determine whether an instruction on the claim was warranted.

### 2. Conversion instruction

Kenai Chrysler further asserts that the trial court erred by instructing the jury on conversion. But Kenai Chrysler fails to provide any citation to the record to support this assertion. Our own review of the record indicates that the superior court did not instruct the jury on conversion. We thus reject Kenai Chrysler's claim of error as inadequately briefed and baseless.

## G. Treble Damages

■ Kenai Chrysler argues that the superior court erred in awarding the Denisons treble damages under the UTPA, asserting that they waived their right to treble damages by withdrawing their claim for punitive damages.[65] Kenai Chrysler reasons that treble damages under the UTPA are a form of punitive damages and were therefore encompassed in the Denisons' waiver. But this reasoning conflicts with the language and purposes of Alaska's treble damages provision.

The UTPA's treble damages provision, AS 45.50.531(a), states that "[a] person who suffers an ascertainable loss of money or property as a result of another person's act or practice ... may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater...."[66] This language appears to authorize treble damages based solely on an allegation and finding that the UTPA has been violated. In addition to specifying that treble damages are to be awarded as a matter of course, subsection .531(a) goes on to allow the court to "provide other relief it

---

64. See, e.g., United Truck Rental v. Kleenco Corp., 84 Hawai'i 86, 929 P.2d 99, 110 (Haw.App. 1996); Persinger v. Lucas, 512 N.E.2d 865, 869 (Ind.App.1987); Moxley v. Cole, 736 So.2d 249, 252 (La.App.1999). But see Whitehead v. Kan. City S. R.R., 758 So.2d 211, 221 (La.App.2000); Lenz v. Cameron, 207 Mont. 506, 674 P.2d 1101, 1103 (1984); Howard v. Holiday Inns, Inc., 276 S.C. 502, 280 S.E.2d 204 (1981), overruled on other grounds by O'Neal v. Bowles, 314 S.C. 525, 431 S.E.2d 555 (1993); Elias v. Mr. Yamaha, Inc., 33 S.W.3d 54 (Tex.App.2000); Nashban Barrel & Container Co. v. G.G. Parsons Trucking Co., 49 Wis.2d 591, 182 N.W.2d 448, 454 (1971).

65. Kenai Chrysler also advances a conclusory argument that UTPA treble damages, like punitive damages, should properly be left to the jury instead of being awarded by the court. Apart from being inadequately briefed, this argument seems to ignore the 1998 amendment to Alaska's UTPA, which makes treble damages mandatory for violations of the UTPA. See AS 45.50.531(a); see also ch. 96, § 3, SLA 1998.

66. AS 45.50.531(a).

considers necessary and proper" [67]—thereby reinforcing the provision's intent to make treble damages automatic. Accordingly, once the Denisons established a UTPA violation resulting in a monetary loss exceeding the UTPA's $500 statutory damages threshold, subsection .531(a) allowed them to recover treble damages regardless of whether they chose to seek any other form of relief.

Kenai Chrysler nonetheless cites AS 45.50.531(i) as supporting its position. Subsection .531(i) refers to awards of punitive damages under subsection .531(a), stating that all such awards are governed by Alaska's law allowing the state to take fifty percent of all punitive damages awards:

> If a person receives an award of punitive damages under (a) of this section, the court shall require that 50 percent of the award be deposited into the general fund of the state under AS 09.17.020(j). This subsection does not grant the state the right to file or join a civil action to recover punitive damages.[68]

Kenai Chrysler reads this provision's mention of "punitive damages under (a) of this section" as a reference to treble damages awarded under the first sentence of that subsection. But this reading ignores the second sentence of subsection .531(a), which authorizes a person suing for treble damages under that subsection to pursue other forms of relief besides treble damages, including common law relief such as punitive damages: "Nothing in this subsection prevents a person who brings an action under this subsection from pursuing other remedies available under other law, including common law." [69] In our view, subsection .531(i)'s mention of "punitive damages" simply refers to punitive damages awarded as "other remedies available" under subsection .531(a)'s second sentence.

Kenai Chrysler also asserts that treble damages should be equated to punitive damages because they serve a punitive role. But this argument overlooks the other important purposes that Alaska's legislature intended the UTPA's treble damages provision to serve. The legislative history of Alaska's provision establishes that treble damages were adopted not just to deter fraud, but also to encourage injured parties to file suits under the UTPA and to ensure that they would be adequately compensated for their efforts.[70] Moreover, because the current version of subsection .531(a) no longer makes treble damages contingent on proof of a willful violation, a separate award of punitive damages for willful or reckless misconduct neither duplicates nor conflicts with an award for treble damages under subsection .531(a).

In short, we find no merit to Kenai Chrysler's argument that the Denisons waived their right to treble damages under the UTPA by agreeing to withdraw their additional claim for punitive damages.

## IV. THE DENISONS' CROSS-APPEAL

### A. Attorney's Fees

As prevailing parties under the UTPA, the Denisons are entitled to "full reasonable attorney fees." [71] The Denisons argue in their cross-appeal that the trial court inappropriately reduced the full fees they requested. In addition, the Denisons argue that the court incorrectly refused to award them fees that they incurred in the related probate matter.

#### 1. The twenty-percent overall fee reduction

■■■■■■■ The superior court awarded the Denisons only eighty percent of the amount

---

**67.** *Id.*

**68.** AS 45.50.531(i).

**69.** AS 45.50.531(a).

**70.** *See* Judiciary Committee Report on HCSCS for Senate Bill No. 352, House Journal Supp. No. 10 at 2, 1970 House Journal (explaining that the treble damages provision is a long standing tool in consumer matters, used to deter fraud, encourage injured parties to bring suit, and compensate parties for their trouble).

**71.** AS 45.50.537(a) provides: "In an action brought by a private person under AS 45.50.471–45.50.561, a prevailing plaintiff shall be awarded costs as provided by court rule and full reasonable attorney fees at the prevailing reasonable rate."

of attorney's fees they requested for work done during the UTPA litigation. In reducing the requested fees, the court explained that, while it "does not challenge the accounting or the hourly rate, it does find that the time spent in pursuit of the claim was more than should be reasonably charged to the Defendants under the circumstances in this case." The Denisons argue that the correct standard under the UTPA is not "whether it is reasonable to charge a losing defendant a certain amount of fees," but "whether the fees were reasonably incurred by the prevailing plaintiff." [72]

Although we have not previously interpreted the UTPA's provision for full reasonable fees, we have interpreted other attorney's fee provisions using similar language and have consistently ruled that they give the trial court considerable discretion in determining the amount of fees that should be considered reasonable.[73] Alaska's general attorney's fee rule, Civil Rule 82, similarly recognizes the need for judicial discretion: Rule 82(b)(1) and (2) set out a specific schedule of presumptively awardable fees,[74] while Rule 82(b)(3) gives the trial court broad discretion to depart from the schedule for any equitable reason described in that subsection.[75]

In our view, the UTPA's full reasonable fee provision gave the superior court similarly broad discretion to decide whether the Denisons' proposed fees were reasonable under the totality of the circumstances presented. Here, the court did not question the number of hours actually billed or the hourly rate of the billings. It nevertheless reduced the amount the Denisons requested by twenty percent to reflect the fees that the court believed to be reasonable based on its own observations. In our view, the court did not err in interpreting the UTPA to permit this

approach; and we find no abuse of discretion in the court's evaluation of the full amount of fees that should reasonably be awarded.

### 2. Exclusion of fees for time spent in probate court

Before reducing the award by twenty percent, the trial court subtracted from the Denison's total attorney's fee request all fees that the Denisons incurred in the probate court proceedings in which Kenai Chrysler attempted to modify David's guardianship order. The Denisons argue that the superior court should have awarded attorney's fees under the UTPA for the probate case because the guardianship hearing was a part of Kenai Chrysler's UTPA violation.

Although this argument is logically plausible, it runs into technical problems because the probate code includes its own fee provision, which allows the probate court to require any petitioning party to pay some or all of the costs of a guardianship proceeding if the court finds that the petitioner proceeded maliciously, frivolously, or without just cause.[76] In this case, the probate court specifically found that Kenai Chrysler's petition to amend David's guardianship was frivolous; on this basis, the probate court required Kenai Chrysler to pay $1,600 in attorney's fees. Because the probate code's fee provisions govern all guardianship proceedings, and because the probate court in this case actually did award fees, any additional award under the UTPA might result in double recovery by the Denisons or expose Kenai Chrysler to double payment. We therefore conclude that the superior court did not err in subtracting billings attributable to the probate case from the Denisons' fee request under the UTPA.

---

**72.** We independently review the superior court's interpretation of the UTPA's attorney's fee provision, *see Halloran v. State, Div. of Elections*, 115 P.3d 547, 550 (Alaska 2005). But we review the amount of the fee award itself for abuse of discretion. *Marsingill v. O'Malley*, 128 P.3d 151, 156 (Alaska 2006).

**73.** For example, we have affirmed a trial court's decision that a prevailing party's fees were reasonable even though they totaled twice the amount charged to the losing party by its own attorney. *Gamble v. Northstore P'ship*, 28 P.3d

286, 289–90 (Alaska 2001) (construing a contract provision regarding attorney's fees); *see also Hunsicker v. Thompson*, 717 P.2d 358, 359 (Alaska 1986) (discussing attorney's fees awards to public interest litigants under Civil Rule 82).

**74.** *See* Alaska R. Civ. P. 82(b)(1) & (2).

**75.** *See* Alaska R. Civ. P. 82(b)(3).

**76.** AS 13.26.131(d).

### B. Failure To Grant the Denisons' Motions for Sanctions

The Denisons argue that the superior court erred in denying its motions to impose sanctions against Kenai Chrysler for (1) failing to provide a representative authorized to bind the defendants at the pretrial settlement conference, and (2) submitting legally inaccurate jury instructions. The Denisons moved for sanctions on both of these grounds below, and Kenai Chrysler opposed the motions. The trial court reserved its ruling on the motions pending the conclusion of trial, but then apparently lost track of them, leaving the issue of sanctions unresolved when the court entered its final judgment. The Denisons did not ask for a ruling before the court entered final judgment and evidently failed to remind the court that the issues remained pending.

Addressing similar circumstances, we have previously held that a moving party forfeits the right to appeal an issue raised in a motion left unresolved by the trial court unless the party called the motion to the trial court's attention and insisted on a ruling before the court entered final judgment.[77] This precedent controls here. The Denisons' failure to flag the unresolved motions and request a superior court ruling before entry of final judgment precludes them from arguing the merits of the motions in this appeal. We thus decline to consider the Denisons' arguments on these points.

## V. CONCLUSION

For these reasons, we AFFIRM the superior court's judgment.

MATTHEWS, Justice, dissenting in part.

**77.** *Thomas v. State,* 391 P.2d 18, 20 (Alaska 1964).

**1.** 506 P.2d 1284, 1292 (Alaska 1973).

**2.** 128 P.3d 164, 169 (Alaska 2006).

**3.** 514 P.2d 236, 238 & n. 6 (Alaska 1973); *see Nashban Barrel & Container Co. v. G.G. Parsons Trucking Co.,* 49 Wis.2d 591, 182 N.W.2d 448, 453–54 (1971) (noting that "several courts sur-

MATTHEWS, Justice, dissenting in part.

In this dissent I argue that the loss of use award is excessive and should be remitted. I also suggest that car rental costs that are not actually incurred should not be used to measure loss of use damages over a long period of time because no reasonable person rents a car at weekly or monthly rates on a long-term basis.

The rule that loss of use damages can be obtained for property that is destroyed or converted is of relatively recent origin. Formerly it was thought that the correct measure of damages simply was the fair market value of the property in question plus prejudgment interest from the date of loss. This was an ongoing controversy as of 1973 when we decided *State v. Stanley.*[1] We did not resolve it for Alaska until *Alaska Construction Equipment, Inc. v. Star Trucking, Inc.* was decided in 2006.[2]

Another somewhat less recent rule that is involved here allows reasonable rental value as a measure of loss of use damages even though no substitute property is actually rented. We adopted this approach in *Burgess Construction Co. v. Hancock,* while recognizing that actually renting a replacement is required in some jurisdictions.[3]

Combining these two rules means that when a vehicle is tortiously destroyed loss of use damages may be recovered, and the measure of the loss of use can be the reasonable rental cost of renting a substitute vehicle even though no substitute is actually rented. Recognizing that loss of use damages should not go on indefinitely, our rule is that they run only for the time reasonably required to buy a suitable replacement vehicle.[4]

Buying a replacement vehicle for an eight-year-old Pontiac should not be a time-consuming process. For all but the impecunious

prisingly do not require an actual rental" and adopting rule that damages for loss of use when vehicle is not repairable are recoverable during period reasonably required for replacement "in an amount equal to that which was actually expended ... provided such amount was not unreasonable").

**4.** *See Star Trucking,* 128 P.3d at 169.

the process should be completed in a couple of weeks. One would expect then that the rules discussed here would leave the plaintiff whose vehicle has been destroyed with a realistic measure of recovery that is fair to both the plaintiff and the defendant. The plaintiff would be entitled to the fair market value of the destroyed vehicle plus car rental charges for a week or two.

But complications develop when the plaintiff whose vehicle is destroyed is impecunious and cannot afford to buy a replacement vehicle. If the plaintiff's lack of financial means may be considered, it may be that the time reasonably required to obtain a substitute vehicle extends indefinitely or at least is very lengthy. And if the measure of the loss of use is prevailing car rental charges even though the plaintiff does not actually rent a substitute vehicle (and could not afford to do so) the loss of use recovery can readily become both unrealistic and unfair. No reasonable person rents a passenger vehicle on a long-term basis at retail weekly or monthly rates.

I would resolve this problem by limiting the use of rental charges that are not incurred as a measure of loss of use damages to the period of time that it would take a person of ordinary means to buy a substitute vehicle. Beyond that period, if the impecunious plaintiff incurs actual damages that exceed prejudgment interest—car pool and public transportation costs, for example—they may be recovered as well. But allowing unincurred rental charges to run on a long-term basis is unrealistic and unreasonable because, as stated, no one reasonably incurs them on a long-term basis.

In the present case I can see no basis for allowing unincurred rental charges for more than a month. Given that the lowest figure for a month's rental was $499 (and choosing the low figure for an eight-year-old car seems right) and that there was no evidence of actually incurred loss of use damages, any figure in excess of that sum for loss of use would be excessive. Accordingly, I would order a remittitur to $499 for the loss of use award.

In all other respects I agree with today's opinion.