NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NCO FINANCIAL SYSTEMS, INC., and THOMAS BURKE WONNELL, | ) ) ) | Supreme Court No. S-13557 |
| Appellants, | ) ) | Superior Court No. 3AN-03-13859 CI |
| v. | ) ) | MEMORANDUM OPINION AND JUDGMENT[*] |
| KIM ROSS, EUNICE WINGET, and WILLIAM JACKSON, | ) ) ) | No. 1416 – April 11, 2012 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Sen K. Tan, Judge.

Appearances: Kendra E. Bowman, Delaney Wiles, Inc., Anchorage, for Appellant NCO Financial Systems, Inc. Mark Regan, Disability Law Center of Alaska, Anchorage, for Appellee Ross.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices. [Christen, Justice, not participating.]

I.    INTRODUCTION

Kim Ross prevailed in an action against NCO Financial Systems, Inc. for violation of the Alaska Exemption Act and the Alaska Unfair Trade Practices and

---

[*]    Entered pursuant to Appellate Rule 214.

Consumer Protection Act (UTPA). The superior court awarded Ross her requested attorney's fees "pursuant [to] the UTPA," less an amount of $812.50 that Ross agreed was attributable to work performed by her attorneys at Alaska Legal Services Corporation relating to her claims against a different defendant. NCO appeals, arguing that (1) Ross was entitled to only a percentage of her attorney's fees under Alaska Civil Rule 82, rather than a full fee award under the UTPA; (2) the requested fees were not reasonable because they were not calculated using the prevailing reasonable rate; (3) the requested fees were not reasonable because the proposed hourly rate and number of hours were unreasonable and insufficiently supported; and (4) the award should not have been made because Ross has made no showing that the attorney's fees belong to her and Alaska Legal Services is barred from collecting attorney's fees. We affirm the superior court's determination that Ross was entitled to full attorney's fees under the UTPA and affirm the fee award in all respects.

## II.    FACTS AND PROCEEDINGS

Between 1995 and 2002, NCO Financial Systems, Inc., formerly known as Alaska Financial Services, Inc., brought three separate actions to collect unpaid financial obligations of three defendants: Kim Ross, Eunice Winget, and William Jackson.[1] The action against Ross was initiated in May 1995. The district court entered default judgment for NCO in the amount of $2,422.06 in February 1996.

According to Ross, NCO imposed a levy on her bank account in the amount of $1,243.98 on October 8, 2003. Ross claimed she called NCO on October 10 to request that the levied funds be released back to her. But according to Ross, NCO refused and told her it had ten days to provide her with an exemption packet, including

---

[1]    *See Alaska Fin. Servs. v. Jackson*, No. 3DI-01-00103 SC; *Alaska Fin. Servs. v. Winget*, No. 3SW-99-00044 SC; *Alaska Fin. Servs. v. Ross*, No. 3AN-95-01818 SC.

a notice of levy and sale of property, as well as a notice of right to exemption. Ross alleged that she was not served with an exemption packet until late in the evening on October 27.

In December 2003 Ross filed a complaint in the superior court for declaratory and injunctive relief and damages.[2] Ross alleged that NCO's failure to serve her with an exemption packet within three days of levying her bank account violated the Alaska Exemption Act (AEA). Ross further asserted that NCO's conduct amounted to "unfair or deceptive acts or practices" under the Alaska Unfair Trade Practices and Consumer Protection Act (UTPA). Ross included Thomas Wonnell, the attorney who represented NCO in the district court, as NCO's co-defendant.

On July 28, 2004, Ross filed a motion for partial summary judgment arguing that NCO's failure to serve her with an exemption packet within three days violated the AEA and the UTPA. NCO, in turn, filed its own motion for summary judgment, arguing that res judicata barred Ross's claims.[3] On November 1, 2004, the superior court granted Ross's partial summary judgment motion, essentially determining NCO's liability to Ross.[4] At some point after November 1, 2004, an entry appeared on CourtView, the court system's computerized case management system, indicating that Ross's case had been "closed" with a "disposition" of "judgment on pleadings for plaintiff." Despite this, however, on November 12, 2004, NCO moved for reconsideration of the superior court's partial summary judgment ruling, arguing that

---

[2]     Winget and Jackson originally joined Ross as co-plaintiffs in this suit, but the cases involving Winget and Jackson are not before this court. Winget dismissed her claims against NCO and Jackson settled with NCO.

[3]     Wonnell also filed a motion for summary judgment on July 30, 2004.

[4]     The superior court also granted Wonnell's summary judgment motion.

Ross had received actual notice of the levy and of her exemption rights. The superior court denied the reconsideration motion. NCO then proceeded with discovery "to determine when Ross received her actual notice and determine if or how Ross was prejudiced by failing to timely receive her statutory notice." NCO also deposed Ross and filed a second motion for summary judgment on April 11, 2005.

The superior court denied both of NCO's summary judgment motions in 2005. Over three years later, on November 26, 2008, Ross filed a request for a status conference, explaining that liability against NCO had been established but that "the question of what relief [Ross] is entitled to" had not been addressed. After a hearing in February 2009, the superior court set a trial date and ordered the parties to file proposed pre-trial deadlines. Rather than proceeding to trial, Ross and NCO stipulated to the entry of a final judgment on April 13, 2009. According to the terms of the final judgment, the superior court awarded $594.69 in damages to Ross and ordered NCO to comply with the notice requirements of the AEA.

Ross filed a motion for an award of costs and attorney's fees two weeks later. Ross's trial counsel, Alaska Legal Services Corporation, was replaced by the Disability Law Center of Alaska for any litigation related to the attorney's fees motion. Ross requested full attorney's fees under AS 45.50.537(a), arguing that she was the prevailing party under both the UTPA and the AEA. Attached to Ross's motion was an affidavit from one of Ross's trial attorneys, Goriune Dudukgian, a staff attorney with Alaska Legal Services. Based on the proposed hourly rates and itemization of hours worked provided by Dudukgian's affidavit and attached billing records, Ross requested $29,273 in attorney's fees.

NCO opposed Ross's attorney's fees motion on several grounds. NCO initially asserted that Ross was entitled "only to eighteen percent of the actual fees 'necessarily incurred' " under Alaska Civil Rule 82(b)(1). NCO additionally argued

Ross's requested attorney's fees were unreasonable and excessive; the submitted itemized billing records were inadequate, inaccurate, and incomplete; and there was "no evidence that the attorney's fees requested belong to [Ross]." Ross filed a reply, repeating her initial arguments and adding that she had no "duty to prove that the attorney's fees at issue belong to her."

On June 7, 2009, the superior court entered an order granting Ross attorney's fees and costs "pursuant [to] the UTPA" in the amount of $28,460.50. Although the superior court made no other findings, we assume that this amount reflects the $29,273 initially requested by Ross, less $812.50 that Ross agreed should be deducted for hours related to her claims against Defendant Wonnell. NCO appeals this attorney's fee award.

## III. STANDARD OF REVIEW

We "independently review the superior court's interpretation of the UTPA's attorney's fee provision . . . . But we review the amount of the fee award itself for abuse of discretion."[5] We will reverse an attorney's fee award as an abuse of discretion only if the award is "arbitrary, capricious, or manifestly unreasonable, or . . . stemmed from an improper motive."[6]

## IV. DISCUSSION

### A. A Plaintiff Prevailing On A UTPA Claim Is Entitled To Full Reasonable Attorney's Fees.

NCO argues that if Ross is entitled to a fee award at all, she is only entitled to fees "necessarily incurred" under Civil Rule 82(b). NCO claims that the superior

---

[5] *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1261 n.72 (Alaska 2007).

[6] *Alyeska Pipeline Serv. Co. v. Beadles*, 731 P.2d 572, 575 (Alaska 1987) (quoting *Alvey v. Pioneer Oilfield Servs., Inc.*, 648 P.2d 599, 601 (Alaska 1982)).

court's fee award "far exceeds" the amount "necessarily incurred" and further argues that an award of full fees is, under Alaska case law, " 'manifestly unreasonable' in the absence of bad faith or vexatious conduct by a losing party." NCO urges us to remand for the trial court to recalculate the fee award under Civil Rule 82.

But it is undisputed that Ross's suit arose under the AEA and the UTPA. Ross's complaint stated that she was pursuing "an action for declaratory and injunctive relief and damages under Alaska's Exemption Act . . . and Alaska's Unfair Trade Practices and Consumer Protection Act." NCO agrees that "[t]his case involved a claim under Alaska's Exemption Act and Alaska's Unfair Trade Practices and Consumer Protection Act."

The AEA provides that "[a] court may award costs and reasonable attorney fees to a party entitled to injunctive relief or damages."[7] The UTPA allows for the award of "full reasonable attorneys fees."[8] Alaska Statute 45.50.537(a) provides that "[i]n an action brought by a private person [under the UTPA,] a prevailing plaintiff shall be awarded . . . full reasonable attorney fees at the prevailing reasonable rate."

Although NCO is correct in its assertion that an award of full fees under Civil Rule 82(b)(3) "is 'manifestly unreasonable' absent a finding of bad faith or vexatious conduct,"[9] the prohibition is based on the purpose of Rule 82 attorney's fees, which "is to compensate a prevailing party partially, not fully, for attorney's fees incurred in litigation."[10]

---

[7]  AS 09.38.095(a).

[8]  *Kenai Chrysler*, 167 P.3d at 1260 (quoting AS 45.50.537(a)).

[9]  *Johnson v. Johnson*, 239 P.3d 393, 400 (Alaska 2010).

[10]  *Demoski v. New*, 737 P.2d 780, 788 (Alaska 1987).

In contrast, statutory fee-shifting provisions such as AS 45.50.537(a) and AS 09.38.095 are an exception to Rule 82. We have previously acknowledged that "Civil Rule 82 may be overridden by agreements (or statutory provision[s]) concerning attorney's fees."[11] Fee provisions that call for attorney's fees in particular cases are "substantive in character," and in cases where they apply "such provisions govern the award of fees rather than Rule 82."[12]

Similarly, we have explained that the mandate requiring full attorney's fees under the UTPA was designed to further the "overarching goal of encouraging small consumer protection claims."[13] This interpretation is supported by the legislative history behind the 1998 enactment of this provision. The drafters of Alaska's UTPA contemplated a simple scheme of "if you win, you get your fees."[14] And the assistant attorney general who testified in favor of the UTPA's fee-shifting provision explained that it was "very significant because a prevailing plaintiff would be able to get an award of full attorney[']s fees and costs and would only be subjected to the payment of attorney[']s fees to a prevailing defendant if it were shown that the plaintiff's suit was frivolous."[15] Given these interests, we have upheld full attorney's fees for claims under

---

[11]    *Gamble v. Northstore P'ship*, 28 P.3d 286, 288 (Alaska 2001).

[12]    *State v. Native Vill. of Nunapitchuk*, 156 P.3d 389, 403 (Alaska 2007) (internal citations omitted).

[13]    *Compton v. Kittleson*, 171 P.3d 172, 180 (Alaska 2007).

[14]    Minutes, House Judiciary Comm. Hearing on H.B. 203, 20th Leg., 2nd Sess. (Feb. 9, 1998) (statements of Representative Eric Croft) (describing the attorney's fees provision as: "If you win, you get your fees.").

[15]    Minutes, House Labor & Commerce Comm. Hearing on H.B. 203, 20th Leg., 1st Sess. (Apr. 23, 1997) (testimony of Daveed Schwartz, Assistant Attorney Gen.) (continued...)

the UTPA, even absent bad faith or vexatious conduct.[16] Thus, the superior court did not err by awarding full reasonable attorney's fees under the UTPA.

> **B.** **The Superior Court's Award Of Attorney's Fees Must Be At The Prevailing Rate To Be Reasonable Under AS 45.50.537(a).**

The trial court has "considerable discretion in determining the amount of fees that should be considered reasonable" under the UTPA's fee-shifting provision.[17] Nevertheless, NCO points out that (1) "[no] explanation is given for . . . awarding such a high figure" and that (2) the superior court "simply put the amount of fees it awarded with the words 'pursuant [to] the UTPA.' " NCO contends that "[t]his falls far short of the requirement for court[s] to evaluate and determine whether the fees and costs were reasonably incurred."

Under AS 45.50.537(a), a plaintiff who prevails on a claim under the UTPA is entitled to "reasonable attorney fees at the prevailing reasonable rate." We have previously discussed the term "reasonable actual attorney's fees" and explained that the trial court has considerable discretion and that "[t]here is no exhaustive list of the factors a court may or should consider in this process" of reviewing the reasonableness of requested attorney's fees.[18] We have also directed the trial court to "carefully consider

---

[15](...continued)
(noting that this "would bring Alaska in line with the vast majority of states").

[16]    *See Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1260-61 (Alaska 2007).

[17]    *Id.* at 1261.

[18]    *Valdez Fisheries Dev. Ass'n v. Froines*, 217 P.3d 830, 833 (Alaska 2009). We emphasized at length in *Valdez Fisheries* that evaluating requested attorney's fees for reasonableness is within the purview of the trial court because the trial court is in a better position to make the determination:

(continued...)

all factors relevant to reasonableness."[19] Factors relevant to reasonableness may include the factors enumerated by Alaska Civil Rule 82(b)(3)[20] and the factors described in

---

[18](...continued)

> The trial court has discretion to resolve such questions and determine the amount of "reasonable actual attorney's fees" because it has knowledge of the case that the reviewing court lacks. The trial court's greater knowledge of the case makes it uniquely suited to answer these questions quickly, accurately, and fairly. The purpose of conferring discretion on the trial court to determine "reasonable actual attorney's fees" is to allow it to use its greater familiarity with the details of the case to perform an objective inquiry into these questions and their like.

*Id.*

[19]     *Krone v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 250, 258 (Alaska 2009).

[20]     *See* Alaska R. Civ. P. 82(b)(3):

The court may vary an attorney's fee award . . . if, upon consideration of the factors listed below, the court determines a variation is warranted:

(A)     the complexity of the litigation;

(B)     the length of trial;

(C)     the reasonableness of the attorneys' hourly rates and the number of hours expended;

(D)     the reasonableness of the number of attorneys used;

(E)     the attorneys' efforts to minimize fees;

(F)     the reasonableness of the claims and defenses pursued by each side;

(G)     vexatious or bad faith conduct;

(continued...)

Alaska Bar Rule 35(a).[21]

### 1. Discrepancy between the billing rates of NCO's and Ross's attorneys

NCO first complains that "[t]he fees charged by Alaska Legal Services are nearly double the amount of fees billed by [NCO's] attorneys." But we have previously concluded that a variance between the amount billed by opposing attorneys does not

---

[20](...continued)

> (H)   the relationship between the amount of work performed and the significance of the matters at stake;

> (I)   the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;

> (J)   the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar, such as a desire to discourage claims by others against the prevailing party or its insurer; and

> (K)   other equitable factors deemed relevant.

[21]   *See* Alaska Bar R. 35(a) (listing the "factors to be considered in determining the reasonableness of a[n] [attorney's] fee" as including:  "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to properly perform the legal service; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the attorney; (3) the fees customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the nature and length of the professional relationship with the client; (6) the time limitations imposed by the client or by the circumstances; (7) the experience, reputation, and ability of the attorney or attorneys performing the services; and (8) whether the fee is fixed or contingent"); *see also Krone*, 222 P.3d at 258 n.49 (citing *State, Dep't of Health & Soc. Servs. v. Okuley*, 214 P.3d 247, 251 n.13 (Alaska 2009); *Valdez Fisheries*, 217 P.3d at 833 n.17).

necessarily lead to a conclusion that the claimed fees are unreasonable.[22]  Rather, "it is a judgment call as to whether such a discrepancy reflects over-preparation and over-billing by one set of attorneys, or under-preparation and under-billing by the other set of attorneys."[23]  Thus, the fact that NCO's attorneys charged less than Alaska Legal Services, standing alone, does not entitle NCO to a reduction in the fee award in NCO's favor.

### 2. Sufficiency of support for the hourly rate proposed by Ross's attorneys

NCO next argues that it is entitled to a reduced fee award because Ross's attorneys did not bill at the prevailing market rates.  NCO contends the hourly rates of $300 per hour for work done by attorney James J. Davis, Jr., $250 per hour for work performed by attorneys Goriune Dudukgian and Jennifer Beardsley, and $100 per hour for paralegal work were unreasonable.  Ross provided the superior court with several cases to support her proposed fee award.  In the first case, *Bayless v. State*, *Department of Health & Social Services*,[24] the superior court issued a 2007 order awarding fees based on Davis's and Dudukgian's work at rates of $275 and $200, respectively.  The superior court based its award in *Bayless* on its review of affidavits from Anchorage practitioners regarding the market rate and its own assessment of the attorneys' skill and experience.

---

[22]  *Gamble v. Northstore P'ship*, 28 P.3d 286, 289-90 (Alaska 2001) ("While a discrepancy . . . can be some evidence that fees are unreasonable, it is not conclusive on that point as there are a number of other possible explanations for such a discrepancy.").

[23]  *Id.* at 290.

[24]  No. 3AN-05-11930 CI (Alaska Super., Oct. 23, 2007).

In a second case, *Kindberg v. Hogan*,[25] the superior court issued a 2009 order awarding fees, using a rate of $300 per hour to calculate the fee based on Davis's work. In an affidavit supporting Ross's request for attorney's fees, Dudukgian pointed to these two cases and also noted in his affidavit that he was reimbursed in a 2008 settlement with the Alaska Housing Finance Corporation "at the rate of $220 per hour." Ross also presented evidence that the third lawyer, Jennifer Beardsley, had skill and experience similar to Dudukgian's. Beardsley graduated from law school in 1997 and immediately began working as a legal aid attorney. Dudukgian graduated three years later in 2000 and, following a clerkship with this court, began work with Alaska Legal Services. Given the similarities in the length and type of practice, the superior court could have concluded that Dudukgian and Beardsley were similarly situated mid-level attorneys. Thus, Ross presented admissible evidence to the superior court supporting hourly rates of $300 per hour for Davis and $220 per hour for Dudukgian and Beardsley.[26]

The fee award of $300 per hour for Davis and $250 per hour for Dudukgian and Beardsley for legal work performed from August 2004 through April 2009 fell within the fee award range established by the evidence. The rate of $300 per hour for Davis was supported by use of the same rate in *Hogan*. Similarly, the superior court's award of $250 per hour for Dudukgian and Beardsley here was also reasonable. While

---

[25] No. 3AN-08-11290 CI (Alaska Super., Apr. 13, 2009).

[26] Dudukgian also points to an affidavit that he filed with the superior court in this case, in which he stated that he understood from "colleagues in the private bar that the fair market rate for a lawyer with my level of experience is approximately $250.00 per hour." Regarding Beardsley, Dudukgian stated that he "understood from colleagues in the private bar that the fair market rate for a mid-level attorney with Ms. Beardsley's experience is approximately $250." But Dudukgian did not submit affidavits from other attorneys in the community, and hearsay statements based on the assessments of unnamed "colleagues in the private bar" are insufficient to support the requested rate as reasonable and prevailing in the market.

there was a slight increase in rate from $220 per hour established by the evidence, the parties agree that the superior court was free to use its independent knowledge of the prevailing market rate to establish a fee award. The superior court thus acted within its discretion in concluding that the rates of $250 per hour for Dudukgian and Beardsley and $300 per hour for Davis were the prevailing market rates for attorneys in this case.

C. **Ross's Requested Hours Of Work Performed By Alaska Legal Services Attorneys Were Reasonable.**

NCO next argues Ross improperly included hours in her billing records and that Ross's billing records were inadequate. Neither argument is convincing.

1. **Reasonableness of the number of hours billed**

NCO claims that the number of hours billed was unreasonable, both because this was "a relatively simple and straightforward case" and because Ross's requested attorney work hours "included time billed when the case had been properly dismissed." NCO contends that Ross requested reimbursement for hours of attorney time that were actually devoted to other plaintiffs' cases and to the case against NCO's co-defendant Wonnell. NCO also argues that Ross requested an award of fees that were best characterized as non-legal paralegal work.

NCO argues that because this was a relatively simple case with a statutory amount in controversy of "merely $500," the "level of effort expended by [Ross's attorneys] was disproportionate to the complexity of the case." Yet litigation of this claim extended over more than a year and involved three motions for summary judgment, two of which were filed by NCO. Moreover, Ross maintains that the primary purpose of the litigation was not monetary relief — it was injunctive relief.

We have consistently ruled that a trial court has "considerable discretion in determining the amount of fees that should be considered reasonable,"[27] and we have recognized that "[i]t is . . . for the trial judge to determine whether too much time was spent by attorneys for the prevailing party or whether too many attorneys were employed."[28] The superior court did not abuse its discretion by awarding substantial attorney's fees despite the relatively small monetary award amount in the case.

Second, NCO argues that the superior court improperly included hours of attorney work performed by the Alaska Legal Services attorneys during a period when the case was allegedly "closed." NCO asserts that it "believed this case was closed when it received the order from the clerk of the court on November 1, 2004" and that "[a]t a minimum, the trial court committed error in awarding attorney's fees from the date the case was dismissed . . . to the date the case was reopened." But the CourtView entry stating that Ross's case was "closed" was incorrect. While NCO's argument might be understandable if this error had caused NCO any confusion at the time, NCO's claim that it believed that Ross's case was closed on November 1, 2004 is belied by the fact that it continued to file dispositive motions and took Ross's deposition after that date. Because

---

[27] *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1261 (Alaska 2007) (noting that we have "affirmed a trial court's decision that a prevailing party's fees were reasonable even though they totaled twice the amount charged to the losing party by its own attorney") (citing *Gamble*, 28 P.3d 289-90).

[28] *Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1017 (Alaska 1999) (alteration in original) (quoting *Integrated Res. Equity Corp. v. Fairbanks N. Star Borough*, 799 P.2d 295, 304 (Alaska 1990)) (upholding a trial court's award that compensated a second attorney for the defendant because the trial court "was able to gauge firsthand in this case whether a second attorney was necessary"); *see also Tenala, Ltd. v. Fowler*, 993 P.2d 447, 452 (Alaska 1999) (determining that the trial court did not abuse its discretion in awarding fees for work that was allegedly duplicative where the opposing party failed to demonstrate the work was also unnecessary).

NCO was filing dispositive motions and conducting discovery, it is difficult for NCO to rely on an argument that Ross's Alaska Legal Services attorneys should not have been performing any legal work on the matter during that time. In any event, the superior court explained during a hearing on February 2, 2009, that it had never entered any final judgment in Ross's case, and it permitted Ross to proceed with her suit. It was not, therefore, an abuse of discretion for the superior court to include in its fee award Ross's requested attorney work hours after November 1, 2004.

NCO further contends that Ross's attorneys' itemization may have included work relating to Ross's co-plaintiffs, Winget and Jackson, because some billing itemizations were simply labeled "client" and did not identify the plaintiff by name. But separate billing records were kept for Winget and Jackson. A cursory review shows no overlap between the different plaintiffs' billing records. For example, on August 17, 2004, when work was performed by Dudukgian for both Ross and Jackson, the billing entries are recorded on different pages and have different labels. NCO points to no specific itemizations to support its claims. Thus, the superior court did not abuse its discretion by failing to exclude itemizations referring to "client" when calculating Ross's fee award.

NCO also claims that several of the billing entries appear to relate to claims against NCO's co-defendant Wonnell. While before the superior court, NCO argued that Ross "cannot shift the fees for the litigation with Wonnell to Alaska Financial Services." NCO did not, however, itemize the charges relating to Wonnell forming the basis of its objection. But when NCO made the argument, Ross identified $812.50 worth of work done that specifically related to Defendant Wonnell and agreed that the work should not be compensated. In response, the superior court reduced Ross's original attorney's fee request by $812.50. Although it made no findings, it seems safe to assume that the

superior court made this reduction based upon Ross's concession that she "identified eight entries for a total of 3.25 hours that reference Defendant Wonnell."[29]

NCO next asserts in a single sentence that some of Ross's requested itemizations for the Alaska Legal Services's paralegals "describe work that is clearly administrative work . . . not billable work by a paralegal." But NCO does not point to any examples of claimed paralegal charges that described work not "customarily performed by an attorney."[30] The superior court was in the best position to determine whether the paralegals' work was properly considered attorney work. The superior court thus did not abuse its discretion by including Alaska Legal Services's paralegals' work hours in the attorney's fee award.

### 2. Sufficiency of detail in the billing records

Finally, NCO argues that Ross did not provide sufficient itemized billing records from Alaska Legal Services to support her requested amount of attorney's fees.[31] We have held "where [a] rule authorizes reasonable actual fees, a court may not award

---

[29] NCO failed to point to any other specific billings relating to claims against Wonnell in the superior court or its opening brief in this court. For the first time in its reply brief, NCO points to specific items that it claims were solely related to work done regarding Wonnell. But an argument cannot be raised for the first time in a reply brief. *See Maines v. Kenworth Alaska, Inc.*, 155 P.3d 318, 330 (Alaska 2007) (The "law is perfectly clear that an argument may not be raised for the first time in a reply brief.").

[30] *See Wasser & Winters Co. v. Ritchie Bros. Auctioneers (Am.), Inc.*, 185 P.3d 73, 83 (Alaska 2008) (citing Alaska R. Civ. P. 82(b)(2)) (stating paralegal work "customarily performed by an attorney" would have been sufficient to support an attorney's fee award).

[31] NCO briefly argues Alaska Legal Services's billing records contained "multiple miscalculations." But because the only miscalculation that NCO identifies is a .01 hour difference in one paralegal's calculated total hours of work, and the miscalculation is in NCO's favor, this argument is unavailing.

attorney's fees to a party who has not itemized his or her requested fees, when the opposing party has requested such itemization."[32]  But in this case, Ross did submit itemized billing records in support of her attorney's fee request with her initial motion.  Thus, NCO's brief assertion that "there [was] no itemization of the hours of work that led to the fees" is incorrect.  NCO also contests, as it did in the superior court, the adequacy of Alaska Legal Services's billing records, specifically (1) the alleged discrepancies in entries for "consultation hours"; (2) the timeline of Dudukgian's entries related to the Ross deposition; and (3) the general vagueness of the itemizations.[33]

First, NCO claims that "[t]here are . . . entries [by Dudukgian and Beardsley] for 'attorney consultation' with Davis when there is no corresponding [billing] entry for Davis."  It points to other entries by the attorneys for "consulting with Davis," which do have corresponding billing entries for Davis.  Ross responds by explaining that Davis simply elected not to bill for all of the consultations with the other attorneys in the case and that this "reflects billing judgment, not an absence of actual necessary work."  There is no reason that Davis could not have elected to consult with other attorneys without billing for these consultations, and given Davis's seniority and experience, the consultations that were billed do not appear to be unreasonable.

---

[32]  *Marron v. Stromstad*, 123 P.3d 992, 1014 (Alaska 2005); *see also Dieringer v. Martin*, Mem. Op. & J. No. 1337, 2009 WL 792761, at *4 (Alaska, Mar. 25, 2009) (concluding that "[b]ecause here [the prevailing party] responded to [the] request for an itemization, and because at least some of the itemized billing records reflect work done specifically for [the prevailing party], we conclude it was an abuse of discretion to refuse to award her any fees at all").

[33]  NCO also objects to the fact that certain of Ross's Alaska Legal Services attorneys accounted for their time worked in quarter-hour increments, while others apparently used hundreth-hour increments. But NCO has not explained why the practice of keeping time in quarter-hour increments was improper.

Second, NCO maintains that Dudukgian's billing records related to Ross's deposition must be inaccurate because there is an entry for the deposition and then subsequent entries for deposition preparation. Yet all of the entries occurred on the same day as Ross's deposition, March 1, 2005. Ross points to Dudukgian's affidavit, where he explained that he recorded itemized entries in a different order from the order in which he had actually performed the corresponding activities. A deposition may be an out-of-office activity where time cannot be recorded immediately. It is not unreasonable that Dudukgian listed a day's activities out of order when all of the activities — client contact, deposition, case preparation, and consultation — reasonably relate to Ross's deposition.

Finally, NCO asserts that several of the itemized billings are deficient because they do not include "any details of what the nature of the work was." We have concluded that it was not an abuse of discretion for a trial court to reduce an award of "full reasonable attorney's fees" by excluding "billings that [were] too vague to allow a fair determination that they were reasonably incurred or incurred in connection with the . . . lawsuit."[34] NCO claims that because several of Dudukgian's billing entries contained phrases such as "client contact" and not the precise nature of the contact or whether it was by phone or written communication, the entries are deficient. It also claims that entries relating to Davis did not always specify that they related to Ross's case. But Dudukgian's failure to specify whether contact with his client was accomplished by a phone call or an email does not preclude the trial court from concluding that the billed hours were justified as long as the contact with Ross was reasonable. NCO also questions the majority of Davis's billings, which relate to "review[ing], revis[ing], and edit[ing]" documents, as well as "consulting." Davis billed

---

[34]    *Bobich v. Hughes*, 965 P.2d 1196, 1200-01 (Alaska 1998).

only 7.25 hours. Given Davis's supervisory role, the superior court was well within its discretion to conclude that these hours were reasonable. The itemized billings submitted by Ross's attorneys were sufficiently detailed to allow the superior court to review them and determine an appropriate award of reasonable fees.

### D. The Requested Attorney's Fees Belong To Ross.

NCO also contends that Ross did not demonstrate to the superior court that the attorney's fees awarded belong to her rather than to Alaska Legal Services.[35] According to NCO, because Ross has not produced any evidence of fee ownership, there is no assurance that the fees belong to her. Ross responds that "[b]y seeking fees through substitute counsel, [she] is following the procedure laid out" by the Federal District Court for the District of Alaska in *Tatum v. Barnhart*.[36] Specifically, Ross states that she was primarily represented by Alaska Legal Services "through the time the superior court entered its order for injunctive relief," and was thereafter represented by substitute counsel, the Disability Law Center of Alaska, "for purposes of presenting her claim for attorney's fees." Ross points to her initial complaint, which stated that Ross and the other plaintiffs were "represented solely by [a private attorney] in their claim for an award of attorney's fees; plaintiffs' Alaska Legal Services Corporation counsel is prohibited from claiming attorney's fees on plaintiffs' behalf."

---

[35] Pursuant to Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, § 504(a)(13), 110 Stat. 1321, "None of the funds appropriated in this Act to the Legal Services Corporation may be used to provide financial assistance to any person or entity . . . that claims . . . or collects and retains, attorneys' fees pursuant to any Federal or State law permitting or requiring the awarding of such fees." Ross notes that the Consolidated Appropriations Act of 2010, Pub. L. No. 111-117, § 533, 123 Stat. 3034, 3157, removed this provision.

[36] 359 F. Supp. 2d 866 (D. Alaska 2004).

NCO cites the federal district court's decision in *Tatum v. Barnhart* for the proposition that federally funded legal services such as Alaska Legal Services may substitute counsel to seek attorney's fees only when "it is the client and not the attorney[] who has legal ownership over the attorney's fees." NCO is correct that the *Tatum* court initially reasoned that an Alaska Legal Services attorney was "not attempting to collect or retain attorney fees" in the case because the plaintiff had signed an agreement stating that any attorney's fees obtained would be donated.[37] But the federal district court also looked to an opinion from the Legal Services Corporation Office of Legal Affairs (OLA), which explained that a legal services attorney could "transfer time records relating to its work for a former client to the former client's new private (non-LSC funded) attorney who seeks to make a claim for attorneys' fees on the . . . client's behalf."[38] The opinion cautioned, however, that this transfer would be appropriate "only in cases in which it is the client and not the attorney(s) who has legal ownership over the attorneys' fees."[39] The *Tatum* court thus concluded that the attorney's fee award made to the plaintiff in that instance pursuant to the Equal Access to Justice Act (EAJA) was appropriate, both because "[u]nder the EAJA, attorney fees are the property of the client" and because "the practice of hiring new, unaffiliated counsel to handle an attorney fees petition, on behalf of a client formerly represented by an LSC attorney, that seeks

---

[37]    *Id.* at 870.

[38]    *Id.* at 871 (quoting Legal Services Corporation Office of Legal Affairs, External Opinion # EX-2003-1005, *available at* http://www.lsc.gov/sites/default/files/ LSC/laws/pdfs/olaeo/EX-2003-1005.pdf).

[39]    *Id.* (quoting Legal Services Corporation, *supra*, note 38).

compensation for the hours spent by the LSC attorney has been formally approved by OLA."[40]

Because it is undisputed that Ross "hir[ed] new, unaffiliated counsel to handle [Ross's] attorney fee petition," the relevant inquiry is whether under the Alaska UTPA attorney's fees are the property of the client. The UTPA expressly states that "a *prevailing plaintiff* shall be awarded . . . full reasonable attorney fees."[41] In addition, we have referred to plaintiffs' entitlement to full reasonable attorney's fees in the UTPA context,[42] and we have "consistently held that clients receiving free legal services may recover attorney's fees."[43] We have also recognized that an attorney's fee award is generally made to the client, not to an attorney.[44] Because the plain language of AS 45.50.537(a) indicates that an attorney's fee award made pursuant to the UTPA belongs to the prevailing plaintiff, the superior court properly awarded attorney's fees to Ross.

---

[40] *Id.*

[41] AS 45.50.537(a) (emphasis added).

[42] *See Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1260 (Alaska 2007) (noting that "[a]s prevailing parties under the UTPA, the Denisons are entitled to 'full reasonable attorney fees' ").

[43] *Vazquez v. Campbell*, 146 P.3d 1, 3 (Alaska 2006) (citing *Cizek v. Concerned Citizens of Eagle River Valley, Inc.*, 71 P.3d 845, 849 (Alaska 2003) ("[A] client's absence of obligation to pay for legal services rendered does not preclude an award of attorney's fees under Civil Rule 82.")).

[44] *See Childs v. Copper Valley Elec. Ass'n*, 860 P.2d 1184, 1191 n.7 (Alaska 1993).

## V.    CONCLUSION

We AFFIRM the superior court's order granting Ross's attorney's fees and costs in the amount of $28,460.50.