Erich PATRAWKE, Appellant,

v.

Tanya LIEBES, Appellee.

No. S–14474.

Supreme Court of Alaska.

Sept. 7, 2012.

Erich Patrawke, pro se, Anchorage, Appellant.

Steven Pradell, Steven Pradell & Associates, Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, FABE and WINFREE, Justices.

## OPINION

CARPENETI, Chief Justice.

## I. INTRODUCTION

A father and a mother share joint legal and equal physical custody over their daughter. The father sought to obtain a passport for the daughter, but federal law requires the consent of both parents if the child is under the age of 16. After the mother refused consent, the father brought a motion in the superior court requesting that the mother be ordered to execute a notarized statement of consent for the passport. The superior court denied this motion and the father appealed. Because the superior court abused its discretion in denying the father's motion, we reverse.[1]

---

1. We heard this case in May 2012 and issued an order reversing the superior court's decision at that time, indicating that a written opinion would follow. This is that opinion.

## II. FACTS AND PROCEEDINGS

Appellant Erich Patrawke and Appellee Tanya Liebes are the natural parents of Kyndle, born in 2004. Patrawke and Liebes share joint legal and equal (50/50) physical custody of Kyndle.[2] Patrawke and Liebes have disagreed on many aspects regarding Kyndle's upbringing, and the superior court has noted that the parties "cannot and will not cooperate in making important legal and other decisions concerning their daughter." The result is that Patrawke and Liebes effectively inhabit separate parallel universes with Kyndle. Under this arrangement, each parent makes all decisions affecting Kyndle during his or her scheduled custodial time, without interference by the other parent.

In August 2011, after unsuccessfully attempting to obtain Liebes's consent, Patrawke filed a motion seeking an order requiring Liebes to execute a notarized written statement of consent to allow him to execute a passport on behalf of Kyndle.[3] Patrawke cited two reasons in support of his motion: (1) he wished to bring Kyndle to visit relatives outside of the United States, including relatives located in France and Germany; and (2) Kyndle's Japanese Immersion Program at Sand Lake Elementary School offered travel opportunities to Japan in elementary, middle, and high school.[4]

On September 6, the superior court denied Patrawke's motion. The court's order stated:

It is extremely premature to have angst about high school exchanges when a child is seven. Travel to Europe to see distant relatives may be nice, but more important is how parents treat each other here. The court recommends that the parties work on their attitudes and behavior towards one another right here. A passport is not required for that.

Patrawke filed a motion for reconsideration, contending that "the passport issue is timely now" because Kyndle's opportunities to participate in exchange programs with Japan begin in fifth or sixth grade. Patrawke further noted that planning for these exchanges begins up to two years in advance. Patrawke also stated that students are encouraged to travel to Japan with their parents on specific programs arranged for Sand Lake students. Moreover, Patrawke noted that he wished to travel abroad to visit relatives, including trips to Canada, and that he was trying to plan a trip to France in summer 2012.

The superior court then denied Patrawke's motion for reconsideration. The court's order stated:

The court understands the child to be seven years old and eligible to travel on the student exchange when in fifth or sixth grade. The court assumes that the child is currently in the second or third grade. Thus, there is no immediate need for the child to have a passport for school reasons. That is not to say the child is condemned to miss her school visit to Japan when the time comes.

In the meantime, visits to Canada may wait until the child has her passport. But it should be remembered that many chil-

---

**2.** Patrawke and Liebes were never married and have never lived together.

**3.** Under federal law, except as otherwise authorized by the President, it is "unlawful for any citizen of the United States to depart from or enter, or attempt to depart from or enter, the United States unless he bears a valid United States passport." 8 U.S.C. § 1185(b) (2006). Thus, Kyndle may not travel outside the United States without a valid passport. Generally, "both parents ... must execute the application on behalf of a minor under age 16...." 22 C.F.R. § 51.28(a)(2) (2012). Further, section 51.28(a)(3)(ii)(G) provides that "[a]n order of a court of competent jurisdiction providing for joint legal custody or requiring the permission of both parents or the court for important decisions will be interpreted as requiring the permission of both parents or the court, as appropriate." Section 51.28(a)(3)(I), however, provides that a passport may be executed on behalf of a minor under age 16 by only one parent if that parent provides "[a] notarized written statement or affidavit from the non-applying parent or legal guardian, if applicable, consenting to the issuance of the passport."

**4.** In July 2009, after Patrawke and Liebes were unable to agree where Kyndle would attend school, the superior court awarded Patrawke "sole legal custody to make the decision which school Kyndle attends." Kyndle was then enrolled in the Japanese Immersion Program at Sand Lake Elementary School.

dren go through life perfectly satisfactorily without going to Canada.

Patrawke appeals the superior court's denial of his motion for statement of consent for passport.

## III. STANDARD OF REVIEW

■■■ "The trial court has broad discretion in determining child custody issues...."[5] Resolution of custody issues "will be reversed only if, after a review of the entire record, we are convinced that the trial court abused its discretion or that the controlling factual findings made by the trial court are clearly erroneous."[6]

## IV. DISCUSSION

### It Was Abuse Of Discretion To Deny Patrawke's Motion For Statement Of Consent For Passport.[7]

■■■ Patrawke argues that the superior court abused its discretion when it denied his motion for statement of consent for passport. Patrawke contends that the superior court's denial was "inconsistent with the [court's] prior orders granting [him] and [Liebes] joint legal and physical custody." Moreover, Patrawke contends that the passport issue is "timely now," as Kyndle's Japanese exchange

opportunities begin while she is in elementary school.

Liebes argues that the superior court did not abuse its discretion. Liebes points out that we have "never held that a court must order a parent to sign a passport form," and that "none of the [best interests] factors in AS 25.24.150(c) specifically address a child's passport...." Liebes then contends that in a joint custody arrangement either "parent can use their joint decision-making authority to veto any proposals upon which both parties do not agree." Finally, Liebes argues that the passport issue is not timely because "[y]ears will go by before a trip to Japan is required."

■■■ The Alaska Legislature has provided little guidance regarding the applicable legal test that a superior court must apply where there exists a dispute between parents who share joint legal custody of a child. But generally a superior court must "award custody on the basis of the best interests of the child."[8] Although Patrawke has not sought an "award" or "determination" of custody as used in the Alaska Statutes, and therefore the explicit statutory best interests factors contained in AS 25.24.150(c)[9] do not apply, we conclude that the superior court was

---

5. *Barrett v. Alguire*, 35 P.3d 1, 5 (Alaska 2001).

6. *Id.* (quoting *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)) (internal quotation marks omitted).

7. In her brief, Liebes also contends that Patrawke's motion is barred by res judicata. "We apply our independent judgment to issues of res judicata...." *McComas v. Kirn*, 105 P.3d 1130, 1132 (Alaska 2005) (citing *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002)). Generally, "[r]es judicata, or claim preclusion, bars relitigation of a claim when there is (1) a final judgment on the merits, (2) from a court of competent jurisdiction, (3) in a dispute between the same parties (or their privies) about the same cause of action." *McAlpine v. Pacarro*, 262 P.3d 622, 625 (Alaska 2011) (quoting *Angleton v. Cox*, 238 P.3d 610, 614 (Alaska 2010)) (internal quotation marks omitted). Because Patrawke's motion is not a new action, but rather part of an ongoing custody case, there is no relevant final judgment and therefore res judicata does not apply. *Cf. id.* at 625–26 (citing *Bunn v. House*, 934 P.2d 753, 757 n. 12, 758 (Alaska 1997)) ("[R]es judicata does not apply to [child] custody modification

motions" because "a custody modification motion is not a new action, but rather a request to reopen the final judgment in the same case.").

Liebes additionally purports to argue that Patrawke's motion is barred by the doctrine of the law of the case. Her brief, however, fails to provide any legal argument regarding how law of the case applies to the present case. Accordingly, we find that Liebes waived this argument. *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." (citing *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980); *Fairview Dev., Inc. v. City of Fairbanks*, 475 P.2d 35, 36 (Alaska 1970), *cert. denied*, 402 U.S. 901, 91 S.Ct. 1374, 28 L.Ed.2d 642 (1971))).

8. AS 25.20.060.

9. AS 25.24.150(c) details various factors a court must take into account in "awarding" or "determining" custody under AS 25.20.060 or in making a modification under AS 25.20.110.

nonetheless required to account for Kyndle's best interests in this situation.[10]

■ We conclude that the superior court abused its discretion in denying Kyndle a passport. In its initial order, the superior court incorrectly noted that school activities requiring a passport would not occur until high school. Although the superior court's later order on reconsideration correctly identified that Kyndle's travel opportunities begin as early as fifth grade, the court maintained that "there is no immediate need for the child to have a passport for school reasons." In so concluding, however, the court failed to consider Patrawke's assertion that planning for Kyndle's exchange opportunities begins up to two years in advance and that Sand Lake encourages students to travel on other tour programs. Moreover, Patrawke asserted that he has been planning a trip to France for summer 2012 and has plans to visit relatives living abroad. Accordingly, this issue is timely.

■ Moreover, the superior court's recommendation "that the parties work on their attitudes and behavior toward one another," noting that "a passport is not required for that," is misguided. Patrawke and Liebes have continually demonstrated extreme inability to cooperate in raising Kyndle,[11] yet the superior court has maintained its joint legal custody order—inevitably leading to additional conflicts between Patrawke and Liebes. While the superior court may have good reasons for maintaining the current joint custodial arrangement, the merits of which are not at issue in this appeal, the court may not deny a party's motion solely on the basis that Patrawke and Liebes have been unable to cooperate. To do so risks harming Kyndle's best interests on account of her parents' inability to cooperate, and restricts Patrawke's ability to have full visits with Kyndle and to maximize summer vacation opportunities.

Finally, and most importantly, Liebes has failed to offer a compelling reason why it would not be in Kyndle's best interests to obtain a passport. Rather, Patrawke has demonstrated that Kyndle has significant opportunities to travel abroad, including important school exchange opportunities—to deny her a passport, without any contrary reason given by Liebes, assuredly would harm her best interests.

## V. CONCLUSION

Because the issuance of a passport is in Kyndle's best interests, and because Liebes has failed to offer a compelling reason why a passport should not be executed on behalf of Kyndle, we REVERSE the superior court.

STOWERS, Justice, not participating.

---

**10.** Other jurisdictions have also concluded that the proper test in considering a passport for a minor child is whether or not the passport is in the best interests of the child. *See Van Osdell v. Van Osdell*, No. CA2007-10-123, 2008 WL 4839667, at ¶16 (Ohio App. Nov. 10, 2008); *Muscarella v. Muscarella*, Nos. 2010-T-0091, 2010-T-0098, 2011 WL 861153, at ¶18 (Ohio App. March 11, 2011) (applying *Van Osdell* test). But the courts' analyses in these cases was based on an Ohio statute that allows a court to modify the "terms" of a shared parenting plan if the court finds the modifications are in the best interests of the child. *See* OHIO REV.CODE ANN. § 3109.04(E)(2)(b) (West 2012). The Alaska Statutes do not contain a comparable provision.

*See also Nagle v. Nagle*, 871 A.2d 832, 837 (Pa.Super.Ct.2005) (concluding that proper test for reviewing a trial court's decision to order two parents to obtain passports for their children was whether the passports were in the best interests of the children).

**11.** Indeed, an earlier judge assigned to this case said this about his own order concerning the parents: "The parties share legal custody. This is a terrible idea. There is no reason why these two parties should share legal custody. The problem is that if one or the other [is] awarded [custody], it could get worse."