NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| HUGH J. WADE, | ) | |
| | ) | Supreme Court No. S-15118 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-09-05096 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| FE T. EDDIE, | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1493 - April 16, 2014 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Heather L. Gardner, Seattle, Washington, for Appellant. John C. Pharr, Law Offices of John C. Pharr, P.C., Anchorage, for Appellee.

Before: Fabe, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Stowers, Justice, not participating.]

I.    INTRODUCTION

Fe Eddie and Hugh Wade are parents to a minor child, K.M. Under the terms of a 2009 custody order, the parties shared legal custody of K.M., Fe had primary physical custody, and Hugh had specified visitation. The arrangement continued undisturbed until 2012, when an issue arose concerning daycare, and both parties filed motions for modification of the custody order. Fe and Hugh also filed motions to reinstate daycare at their respective preferred locations. The superior court denied

---

[*]    Entered under Alaska Appellate Rule 214.

Hugh's motions and granted Fe's. The court also awarded sole legal custody regarding educational decisions to Fe. Hugh filed a motion for reconsideration, which the superior court denied. Hugh now appeals.

## II. STANDARD OF REVIEW

We will reverse a superior court's custody modification order only where "that court has abused its discretion or when its controlling findings of fact were clearly erroneous. An abuse of discretion occurs if the superior court considers improper factors in making its custody determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others."[1] "Factual findings are clearly erroneous if, on the basis of the entire record, we are left with a definite and firm conviction that a mistake has been made, even though there may be evidence to support the finding."[2]

## III. DISCUSSION

### A. There Was A Change In Circumstances Warranting Modification Of The Custody Order.

Hugh's first argument on appeal is that the superior court found there was no substantial change in circumstances, so it was error for the court to modify the 2009 custody order by granting legal custody for educational decisions to Fe. Hugh is correct that, in order to modify a custody order, a court must find a change in circumstances warranting such modification.[3] Here, the superior court found no substantial change in circumstances warranted modification of the *physical* custody arrangement. However,

---

[1]     *Heather W. v. Rudy R.*, 274 P.3d 478, 481 (Alaska 2012) (citations, alterations, and internal quotation marks omitted).

[2]     *Id.* (citation, alteration, and internal quotation marks omitted).

[3]     *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011) (citations omitted).

the court did find that the parents' disagreement over where K.M. should attend daycare "constitutes a change in circumstances sufficient to modify legal custody."

Hugh appears to rely on the superior court's oral findings to support his contention that the court found no substantial change in circumstances. However, upon examination, the court's oral findings mirror its written ones: there was no substantial change warranting a modification of the *physical* custody arrangement.[4] But the court did make several oral findings supporting its ultimate conclusion that there was a change in circumstances justifying modification of *legal* custody.[5]

Hugh also argues that it was error for the court to find no substantial change but still engage in an analysis of the AS 25.24.150(c) best interests factors. Indeed, before the court may consider the statutory best interests factors, it must find a substantial change in circumstances warranting modification.[6] The court here did engage in a discussion of those factors in its consideration of a physical custody modification. However, the court was merely demonstrating that, even if there had been a substantial

---

[4] The court stated:

> The motion[] that [was] set [for] today was a motion to modify, [to] change total physical custody from Ms. Eddie to Mr. Wade. I'm not going to do that. . . . [A] modification requires that [the] burden of proof [is] on the person seeking that to show that there's been a substantial change in circumstances. I don't find . . . that's occurred.

[5] For example, the court found it impossible for the parties to discuss educational issues, and that the situation as it stood was unworkable. The court further found that where, as here, "the parties cannot agree . . . the court has to make a decision and that decision is Ms. Eddie's from now on going to have" legal custody for education purposes.

[6] *Rego*, 259 P.3d at 452 (citation omitted).

change in circumstances warranting a physical custody modification, the best interests factors did not weigh in favor of a change.[7]

The court found that no substantial change in circumstances warranted modifying the physical custody arrangement, so the court did not modify that aspect of the 2009 order. But the court did find that a change in circumstances warranted modification of the legal custody arrangement, and it did modify that aspect of the 2009 order. These findings are not inconsistent or otherwise erroneous.

**B.    The Superior Court Did Not Abuse Its Discretion Or Make Clearly Erroneous Factual Findings.**

Hugh's second argument is that the court "engaged in a selective cherry picking of the evidence presented at hearing in order to justify an otherwise unwarranted modification." As a result, "[t]he court's decision to grant Fe sole legal decision making authority over educational decisions was unsupported by the entire hearing record." Hugh asserts that the superior court failed to properly weigh the testimony presented. He notes that, despite his own testimony and that of others who supported his cause, the superior court found Hugh's attitude regarding the daycare dispute was manipulative and the situation "unworkable."

Hugh argues that the superior court's finding that he "continually complains" about Fe's "interfering with his ability to have visitation with the child" is "totally unsupported" by the record. But the court made this comment in the context of its finding that the AS 25.24.150 best interests factors did not weigh in favor of modifying the *physical* custody arrangement, as noted above. Because the court did not

---

[7]    The court stated: "[E]ven if [something] did change, which I don't find . . . if we were to look at the . . . custody considerations, physical, emotional, mental, religious needs of the child . . . none of those things have changed."

ultimately modify the physical custody arrangement, its comment in that context, even if unsupported, is irrelevant to Hugh's appeal of the *legal* custody modification.

Nor did the superior court "improperly construe against [Hugh] the simple fact that he brought the dispute to the court for resolution in the first place." The court found that Hugh's behavior and attitude regarding the daycare dispute made it impossible for the original legal custody arrangement to remain intact. While Hugh attempts to reweigh the evidence presented at hearing, the superior court's factual findings are given special deference where, as here, they are based primarily on oral testimony.[8] We find no clear error in the superior court's findings.

Hugh also argues that the superior court misstated evidence on two occasions, which "calls into question whether the superior court adequately listened to the testimony as it occurred, understood the testimony, or gave itself sufficient time to review the record and consider[] the case before rendering its decision." Hugh points first to the court's finding that Hugh had taken "the child . . . out of Little Steps" daycare when, actually, Fe had done so. However, the court found that, while the child was enrolled there, Hugh had taken over K.M.'s transportation to and from Little Steps "and ended up . . . essentially interfering with the custody time by [Fe]." The court continued: "I find that essentially [Fe] had no choice but to move the child out of Little Steps Daycare . . . because it was an unworkable situation. It was interfering with her ability to be the primary custodian."

It appears that the superior court understood that Hugh had not personally removed the child from Little Steps because the court also found that Hugh would "do whatever [he needed] to do to keep the child down at Little Steps." The court found this was part of "a pattern of controlling behavior" necessitating legal custody modification.

---

[8]     *Rego*, 259 P.3d at 452 (citation omitted).

Hugh also points to the superior court's statement that "[t]hey have another child" in connection with Susanna Smith's testimony. Hugh argues that the court must have been under the mistaken belief that Fe and Hugh had another child. The court here may be referring to Smith's granddaughter, though its meaning is not clear. However, there is nothing in the record to suggest that this stand-alone statement had any bearing on the court's decision to modify legal custody. Similar to the "continually complains" comment noted above, the court mentioned "another child" in the context of its finding that the AS 25.24.150 best interests factors did not weigh in favor of modifying the physical custody arrangement, which has no bearing on Hugh's appeal of the legal custody modification.

## C. The Superior Court's Findings Were Adequately Articulated.

Hugh also argues that, in its discussion of the statutory best interests factors, the "court provided wholly inadequate, and in fact somewhat incoherent, reasons justifying its findings," which "present a barrier to this court in review of its reasoning." But as we explained above, the court discussed the statutory best interests factors only in passing, to explain that even if there were a substantial change in circumstances justifying a modification of the physical custody arrangement, those factors did not support Hugh's proposed change. Thus, while Hugh is correct that the court did not engage in a lengthy discussion of the factors, because the court did not ultimately modify the *physical* custody arrangement, the sufficiency of that discussion is irrelevant to this appeal.

In contrast, the court gave a lengthy oral explanation of why modification of the *legal* custody arrangement was necessary. The court found that Hugh interfered with Fe's position as primary custodian of the child; that Fe was capitulating to Hugh's demands regarding daycare because he intimidated her; that Hugh was "engaged in[] a pattern of manipulation and intimidation"; that he had "been an obstructionist with the

-6-                                                                              1493

ability of these two parents to get along and finding a reasonable daycare situation"; and that he had been unaccommodating, controlling, and even threatening.

The court concluded that "[w]hen the parties cannot agree and they can't cooperate and they can't work out to be what's best for the child as well as to be . . . workable to maintain a solid appropriate relationship with the child the court has to make a decision."  Given these findings, the court concluded that it was impossible "for these two people to discuss these issues . . . [or] to make the decisions jointly," and awarded sole legal custody for educational purposes to Fe.[9]

"We review alleged inadequacy of a superior court's fact findings to determine whether they give a clear indication of the factors considered important by the superior court or allow us to determine from the record what considerations were involved."[10]  The court here did not fail to provide an adequate explanation of its findings.  We also note that the statute allows the superior court to consider the enumerated custody factors as well as any "other factors that the court considers pertinent."[11]

**D.**     **The Superior Court Did Not Err By Refusing To Hear Testimony About Fe's Alleged Domestic Violence.**

---

[9]     In its written findings, the court stated Hugh "is unwilling or unable to cooperate with [Fe] to make educational decisions in the best interests of the minor child. He will constantly try to impose his will on her.  Thus, for these parents, co-parenting for educational decisions is impossible."

[10]     *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137 (Alaska 1997) (citation omitted).

[11]     AS 25.24.150(c)(9); *see also Virgin v. Virgin*, 990 P.2d 1040, 1045 (Alaska 1999) (citations and internal quotation marks omitted) ("[T]he trial court need not refer to all of the statutory factors in explaining its custody decision.  It must only discuss those factors that it considers actually relevant in light of the evidence presented.").

Hugh also argues that "[t]he trial court incorrectly prevented Hugh from testifying about incidents in which Fe had hit him in the past."  The superior court did refuse to hear testimony on this issue, reasoning that because the alleged incidents occurred before the 2009 custody order was issued, Hugh could not "go back and re-litigate everything in the past.  [We're] only dealing with substantial change in circumstances since the order was entered."

In *Kenai Chrysler Center, Inc. v. Denison*,[12] we noted that "[u]nder Alaska Rule of Evidence 103(a)(2), a party may not claim error in a ruling that excludes evidence unless the substance of the evidence was made known to the court by offer or was apparent from the context."[13] We concluded that the appellant had failed to preserve an evidentiary issue on appeal because it had "never objected to the trial court's rulings and made no offer of proof as to the details excluded from [the] proposed testimony."[14] We noted that the requirements of Rule 103(a)(2) are not met where the appellant "made no formal offer to establish a record of the evidence it sought to include, and . . . the context provided by the current record fails to make clear what testimony the superior court excluded."[15]

In this case, Hugh may have been trying to establish that Fe had a history of domestic violence that was relevant to the custody modification.[16] But Hugh made no

---

[12]     167 P.3d 1240 (Alaska 2007).

[13]     *Id.* at 1254 (citations and internal quotation marks omitted).

[14]     *Id.* (citation omitted).

[15]     *Id.*

[16]     *See McAlpine v. Pacarro*, 262 P.3d 622, 626 (Alaska 2011) (stating that "we have relaxed [the usual rule requiring a change in circumstances since the previous
(continued...)

attempt to explain the purpose for this inquiry after the superior court noted that "we're not going to re-litigate the whole case." And Hugh did not make any offer of proof to show the substance of the testimony he was asking to present. Under these circumstances, we cannot determine whether the superior court's ruling was erroneous or whether Hugh suffered any substantial prejudice. Hugh's failure to object or make a formal offer of proof constitutes failure to preserve this issue under Rule 103.

### E. Awarding Sole Legal Custody Over Educational Decisions To Fe Does Not Effectively Strip Hugh Of Legal Custody.

Hugh also argues that the superior court erred by granting sole legal custody to Fe for purposes of educational decisions because that "defeats the entire . . . purpose of joint legal custody." Hugh acknowledges our statement in *Bird v. Starkey* that a judge faced with a situation in which the parents are incapable of cooperating with each other on decisions regarding their child's education may choose "to modify the joint custody arrangement with respect to educational issues, assuming the parties can continue to agree on other issues."[17] We reasoned: "While a judicial tribunal may be ill-equipped to decide which school a child should attend, it is competent to decide *who* should decide."[18]

Hugh asserts that "what the trial court has effectively accomplished by stripping Hugh of any decision-making authority over 'educational decisions' from the day care dispute is to effectively strip him of joint legal custody." He claims "the vast

---

[16](...continued)
custody order] in custody matters involving domestic violence, directing the superior court to look back to events that occurred before the initial custody order if not adequately addressed at the initial custody determination").

[17]     914 P.2d 1246, 1250 n.6 (Alaska 1996).

[18]     *Id.* (emphasis in original).

majority of decisions that are to be made for a five year-old child are educational decisions," or "can be readily argued to be educational decisions."[19]  Hugh argues that we should reject our analysis in *Bird* as inadvisable dicta because it will likely result in the parent with sole legal educational custody making unilateral decisions without attempting to cooperate with the other parent.  But we conclude that this approach to legal custody is sometimes warranted and may often be preferable to granting sole legal custody to one parent.

Hugh argues that the superior court's decision is incompatible with *Bell v. Bell*[20] and *Ronny M. v. Nanette H.*[21]  But in *Bell* we reversed the superior court's award of full legal custody to the mother because the parents only disagreed substantially over daycare.[22]  We noted that, while "disagreement over daycare relates to a fundamental child care issue . . . resolution of this issue did not require denial of that which the Alaska legislature recognizes as the favored course; i.e., joint legal custody."[23]  The superior court here did not run afoul of *Bell* because it did not award full legal custody to Fe.

In *Ronny M.*, we upheld the superior court's decision to grant "the parties a modified form of joint legal custody, under which they must communicate with each other and attempt to agree on major decisions affecting the [children's] welfare, but [the

---

[19]    But we have held that "[t]he essential feature of legal custody is the discretion to make major decisions regarding a child's upbringing.  These decisions include choices regarding education, health care, morals, and religion."  *Elton H. v. Naomi R.*, 119 P.3d 969, 975 (Alaska 2005) (citations omitted).

[20]    794 P.2d 97 (Alaska 1990).

[21]    303 P.3d 392 (Alaska 2013).

[22]    794 P.2d at 99-100.

[23]    *Id.* at 100.

mother] is given final decision-making authority should they fail to agree."[24]   Hugh

argues that the superior court erred by failing "to involve both parents in major decisions

. . . eliminat[ing] the need for [Fe] to attempt to communicate and make joint decisions

with Hugh about their child."  However, in *Ronny M.*, we found only that the superior

court had not "abuse[d] its discretion by ordering this modified form of joint legal

custody."[25]  This conclusion does not require all courts facing similar circumstances to

adopt this remedy.

While *Bell* does support the proposition that joint legal custody should be

implemented whenever possible, our recommendation in *Bird* clarifies that if the parents

cannot effectively cooperate on one particular category of legal custody, the superior

court may grant legal custody to just one parent as to that category.[26]  We conclude that

the superior court was within its discretion when it found that, "for these parents, co-

parenting for educational decisions is impossible" and awarded educational custody to

Fe.

F.      **There Is No Need To Decide Whether The Superior Court Erred By
        Failing To Issue Written Findings Immediately After The Hearing.**

Hugh's final argument is that the superior court delayed distributing its

written findings until several months after the hearing, so that Hugh was unable to appeal

the decision and thus "deprived of his potential opportunity to exercise legal custody that

was erroneously removed from him by the trial court."  However, "Hugh does not

request a specific remedy for this error on the trial court's part, in part because there is

---

[24]      303 P.3d at 404.

[25]      *Id.* at 405.

[26]      *Patrawke v. Liebes* provides another example of a superior court awarding
sole legal custody to one parent "to make the decision which school [the child] attends."
285 P.3d 268, 270 n.4 (Alaska 2012).

no case law on point." But Hugh does not explain why he did not alert the superior court to his concern about this delay. Moreover, Hugh does not suggest that he is entitled to any relief on this issue.

## V.    CONCLUSION

We AFFIRM the superior court's decisions on the parties' motions to modify custody.