**Joann BENTON, Appellant**

v.

**Dan SOTINGEANU, Appellee**

**NO. 2013–CA–001060–MR**

Court of Appeals of Kentucky.

RENDERED: OCTOBER 24, 2014; 10:00 A.M.

Rehearing Denied December 16, 2014

Briefs for Appellant: Heidi Hopfensperger, Hazard, Kentucky.

Brief for Appellee: Bill Meader, Hyden, Kentucky.

BEFORE: COMBS, STUMBO AND THOMPSON, JUDGES.

*OPINION*

THOMPSON, JUDGE:

Joann Benton appeals from an order of the Perry Circuit Court ordering Joann to take the necessary action for the issuance of a passport for the parties' minor child. She alleges the trial court modified the custody decree without making specific findings of fact as required by Kentucky Rules of Civil Procedure (CR) 52.01, the trial court abused its discretion, and the order was contrary to federal law and policy. We affirm.

Joann and Dan Sotingeanu, who never married, are the parents of a daughter, Lauren, born on July 12, 2004. In 2007, a custody decree was entered awarding joint custody and Dan timesharing with the parties' daughter including two non-consecutive weeks during the summer, to be exercised one week at a time. Pursuant to the decree, Dan must give Joann notice as to the dates of his two non-consecutive weeks

of summer timesharing no later than May 1st of each year.

Dan desired to take Lauren on a vacation to the Bahamas requiring her to have a passport.[1] However, federal law requires the consent of both parents or each of the minor's legal guardians when applying for a passport for a minor under the age of sixteen. 22 Code of Federal Regulations (CFR) § 51.28. The regulation further provides a joint custody order is interpreted as requiring the permission of both parents. 22 CFR § 51.28(3)(ii)(G). There are exceptions that permit one parent or legal guardian to apply for the minor's passport including when "a notarized written statement or affidavit from the non-applying parent or legal guardian ... consenting to the issuance of the passport" is provided. 22 CFR § 51.28(3)(i). The regulation also provides one parent may apply for the minor's passport if an order of a court of competent jurisdiction specifically authorizes the applying parent to obtain a passport for the minor, regardless of the custodial arrangements or if it specifically authorizes "the travel of the minor with the applying parent or legal guardian[.]" 22 CFR § 51.28(3)(ii)(E). Because of the joint custody arrangement and Joann's refusal to consent, Dan filed a motion to require Joann to execute all forms necessary to enable Dan to obtain a passport for Lauren.

A hearing was held on May 10, 2013. The court heard arguments by counsel. Joann's counsel expressed concern that if a passport was issued, Dan would take the child to Romania where he has family. Dan's counsel pointed out Dan is a physician in the United States and a naturalized citizen and there was no evidence that Dan had any intent of abducting Lauren.

Joann testified and detailed the animosity between the parties and Dan's failure in the past to apprise her of vacations taken with Lauren during his visitation periods. She was further permitted to testify regarding her own research into child abductions and opine that Dan fits "the profile" of a parent that would abduct his child to a foreign country.

After hearing arguments and Joann's testimony, the court stated it would grant the motion and expressly stated the basis for its ruling: "There's nothing that is going to be perfect, it's a balance, and I'm not looking only to the interest of the parties, but I've said this so many times, that I'm looking to the best interest of the child." However, the court indicated the motion was granted cautiously and imposed certain conditions upon any international travel by Dan with Lauren. A hearing was scheduled for June 3, 2013, for review of the final order.

The final order requires Joann to "immediately take whatever action is necessary to insure the issuance of the U.S. passport of the parties' minor child." The order imposes numerous safeguards for the trial court to monitor any international travel with Dan. The order requires that Dan post a cash bond prior to any international travel in the amount of $250,000 and that any such travel be approved by the trial court upon motion and notice. Dan must provide a preliminary itinerary prior to his departure and a hearing is to be conducted. Following that hearing, if the parties cannot agree, an additional hearing is required to approve the final itinerary. Until an order of the trial court requiring its release to Dan, Lauren's passport remains in Joann's possession. While on any

---

1. With the passage of time, the issue of Dan's vacation plans with Lauren in 2013 is now moot. However, if issued, the passport would permit Dan to take future international trips with his daughter.

international trip, Dan must ensure that Lauren contact Joann three times per week, by telephone. After Dan and Lauren return from any international trip and compliance with the court's conditions, the bond, with accrued interest, will be returned to Dan and the passport delivered to Joann.

■ Joann's initial contention is that the trial court failed to make specific, written findings of fact and conclusions of law requiring that we reverse and remand the case to the trial court. Although she admits she did not request additional findings of fact pursuant to CR 52.04, she contends even absent such a request, the trial court was required to comply with CR 52.01.

CR 52.01 provides in part: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon[.]" The rule further provides: "Findings of fact and conclusions of law are unnecessary on decision of motions ... except as provided in Rule 41.02." [2] CR 52.04 provides:

A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02.

In *Anderson v. Johnson,* 350 S.W.3d 453, 458 (Ky.2011), the Court recognized there is "some tension between the language in CR 52.04, which requires a *party* to object to the lack of a finding of fact, and the language in the first subsection of the rule, CR 52.01, which mandates that a *court* make findings of fact and conclusions of law." In the context of modifications of custody/timesharing decrees, the Court pointed out that although "a 'motion,' a motion for modification is actually a vehicle for the reopening and rehearing on some part of a final order[.]" *Id.* at 456–57. The Court held the trial court was required to make findings of fact and the failure of a litigant to request factual findings in the trial court did not preclude an appellate court from remanding the case to require the trial court to make such findings. *Id.* at 459. The Court reiterated the same reasoning and rule in *Keifer v. Keifer,* 354 S.W.3d 123, 126 (Ky.2011).

Joann contends the trial court's order requiring her to execute the documents necessary for the issuance of a passport is a modification of timesharing requiring written specific findings of fact and conclusions of law. Dan maintains this was not an action "tried upon the facts" but was a motion that did not require written findings under CR 52.01. He points out nothing in the trial court's order altered Dan's summer timesharing with Lauren including its provision for two non-consecutive weeks in the summer.

In *Pennington v. Marcum,* 266 S.W.3d 759, 767 (Ky. 2008), the Court noted the terms visitation and timesharing refer to "how much time a child spends with each parent[.]" Here, there was no change in the time Dan will spend with Lauren during summer breaks. Although Joann speculates that Dan will seek consecutive weeks during the summer to travel with Lauren, that is simply not what the trial court's order permits nor what Dan requested. He did not seek a reopening or rehearing on some part of a final order and, in fact, there is nothing in the final decree which restricts Dan's summer timesharing to a specific location. We, therefore, agree with Dan that the court was

---

**2.** CR 41.02 relates to involuntary dismissals and has no application to this case.

not required to make written specific findings of fact and conclusions of law as dictated by *Anderson.*

Our decision that the instant matter was not a modification of timesharing leads to the question of what standard the trial court must apply in determining whether to grant a motion to require an objecting parent to comply with the necessary federal regulations to obtain a passport for a child. In *Patrawke v. Liebes,* 285 P.3d 268, 271 (Alaska 2012), the Court held the issuance of a passport was not a custody matter and, therefore, the explicit statutory factors applicable to custody do not apply. Nevertheless, the Court held that as any matter pertaining to children, the Court was required to consider the child's best interest. *Id.* at 272. The Court noted its view was consistent with those jurisdictions that have held the proper test for considering a passport for a minor child is whether or not the passport is in the best interest of the child. It cited the following cases along with parenthetical information and commentary:

> *See Van Osdell v. Van Osdell,* No. CA2007–10–123, 2008 WL 4839667, at ¶ 16 (Ohio App. Nov. 10, 2008); *Muscarella v. Muscarella,* Nos. 2010–T–0091, 2010–T–0098, 2011 WL 861153, at 18 (Ohio App. March 11, 2011) (applying *Van Osdell* test). But the courts' analyses in these cases was based on an Ohio statute that allows a court to modify the "terms" of a shared parenting plan if the court finds the modifications are in the best interests of the child. *See* OHIO REV.CODE ANN. § 3109.04(E)(2)(b) (West 2012). The Alaska Statutes do not contain a comparable provision. *See also Nagle v. Nagle,* 871 A.2d 832, 837 (Pa.Super.Ct.2005) (concluding that proper test for reviewing a trial court's decision to order two parents to obtain passports for their children was whether

the passports were in the best interests of the children).

*Id.* at n. 10.

In Kentucky, the best interest of the child standard has been consistently applied where the constitutional rights of a parent are not involved. *Burchell v. Burchell,* 684 S.W.2d 296, 300 (Ky.App.1984), states the rule that when parties who share joint custody are unable to agree on a major parenting issue concerning their child, the trial court acts within it continuing jurisdiction to resolve the issue in accordance with the child's best interest. "Once the parents have abdicated their role as custodians to the trial court, its decision is binding on the parties until it is shown that the decision is detrimental to the child physically or emotionally, or is no longer in his best interest." *Id.*

The trial court's oral findings of fact made during the hearing demonstrate it carefully considered the benefits to Lauren from possible international travel against the possible detriment. Ultimately, the trial court ordered only that Joann take the necessary action to permit Dan to obtain a passport for Lauren and did not authorize any specific international travel. Under the circumstances, we conclude the trial court did not abuse its discretion. *D.J.D. v. Cabinet for Health and Family Services,* 350 S.W.3d 833, 837 (Ky.App. 2011).

Finally, Joann contends the Perry Circuit Court could not require her to take any action to secure a passport for Lauren absent exigent or special family circumstances because federal law requires two-parent consent. Without citation to authority, she argues she cannot be compelled to consent to the issuance of a passport. We disagree.

The federal regulations permit a parent to apply for a passport for a minor under

the age of sixteen regardless of the custodial relationship either with the consent of both parents or by order of a court of competent jurisdiction authorizing the applying parent to obtain a passport for the minor. Thus, to comply with the applicable federal regulations to obtain a passport for Lauren, Dan could either obtain Joann's consent or a court order permitting him to obtain a passport for Lauren. 22 CFR § 51.28. The result is the same whether the court issued an order directly permitting Dan to obtain a passport or ordered Joann to execute any documents necessary for Dan to obtain a passport.

Based on the forgoing, the order of the Perry Circuit Court is affirmed.

ALL CONCUR.